UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-08471-CAS(MRWx) | Date | January 15, 2014 |
|---|---|---|---|
| Title | JESSIKA TSENG V. NORDSTROM, INC. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | | |
|---|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | Attorneys Present for Defendants | |
| Not Present | Not Present | |

**Proceedings:** (IN CHAMBERS): PLAINTIFF'S MOTION FOR CLASS CERTIFICATION (dkt. 128, filed August 23, 2013)

PLAINTIFF'S MOTION FOR APPOINTMENT AS CLASS COUNSEL (dkt. 129, filed August 23, 2013)

## I.    INTRODUCTION & BACKGROUND

On September 9, 2011, plaintiff Jessika Tseng filed a complaint in the Los Angeles County Superior Court against defendant Nordstrom, Inc. ("Nordstrom"). Plaintiff was employed by Nordstrom as a cosmetics counter salesperson from August 2008 until May 31, 2011, at several locations in California. Compl. ¶ 6. Plaintiff alleges that Nordstrom violated California Labor Code § 1198 and Industrial Welfare Commission Order No. 7-2001, § 14(A), by failing to provide suitable seats to cosmetics counter salespeople throughout California. On October 13, 2011, defendant removed the case to this Court on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332(a) and the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1453, and 1711-1715. Dkt. 1.

On August 23, 2013, plaintiff filed a motion for class certification and for appointment as class counsel. Dkts. 128, 129. Plaintiff seeks to certify a class consisting of:

> All persons who were or have been employed by Nordstrom as Cosmetics Counter Employees in the State of California at any time from September 9, 2010 to the final judgment in this action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-08471-CAS(MRWx) | Date | January 15, 2014 |
|---|---|---|---|
| Title | JESSIKA TSENG V. NORDSTROM, INC. | | |

Mot. 10. Defendant filed its opposition on November 8, 2013, and plaintiff replied on December 30, 2013. Dkts. 147, 152. On January 13, 2014, the Court held a hearing. After considering the parties' arguments, the Court finds and concludes as follows.

**II.    LEGAL STANDARD**

"Class actions have two primary purposes: (1) to accomplish judicial economy by avoiding multiple suits, and (2) to protect rights of persons who might not be able to present claims on an individual basis." Haley v. Medtronic, Inc., 169 F.R.D. 643, 647 (C.D. Cal. 1996) (citing Crown, Cork & Seal Co. v. Parker, 462 U.S. 345 (1983)). Federal Rule of Civil Procedure 23 governs class actions. A class action "may be certified if the trial court is satisfied after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 161 (1982).

To certify a class action, plaintiffs must set forth facts that provide prima facie support for the four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Wal-Mart Stores, Inc. v. Dukes, 564 U.S. ---, 131 S. Ct. 2541, 2548 (2011); Dunleavy v. Nadler (In re Mego Fir. Corp. Sec. Litig.), 213 F.3d 454, 462 (9th Cir. 2000). These requirements effectively "limit the class claims to those fairly encompassed by the named plaintiff's claims." Falcon, 457 U.S. at 155 (quoting Califano v. Yamasaki, 442 U.S. 682, 701 (1979)).

If the Court finds that the action meets the prerequisites of Rule 23(a), the Court must then consider whether the class is maintainable under Rule 23(b). Dukes, 131 S. Ct. at 2548. Rule 23(b)(3) governs cases where monetary relief is the predominant form of relief sought, as is the case here. A class is maintainable under Rule 23(b)(3) where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and where "a class action is superior to other available methods for fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "The Rule 23(b)(3) predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1022 (9th Cir. 1998) (citing Amchem Products, Inc. v. Windsor, 521 U.S. 591 (1997)). The predominance inquiry measures the relative weight of the common to individualized claims. Id. "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-08471-CAS(MRWx) | Date | January 15, 2014 |
|---|---|---|---|
| Title | JESSIKA TSENG V. NORDSTROM, INC. | | |

judicial economy." Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1189 (9th Cir. 2001) (citing Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996)). In determining superiority, the court must consider the four factors of Rule 23(b)(3): (1) the interests class members have in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigations concerning the controversy already commenced by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely encountered in the management of a class action. Id. at 1190-1993. "If the main issues in a case require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate." Id. (citing 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Practice and Procedure § 1778 at 535–39 (2d. 3d. 1986)).

More than a pleading standard, Rule 23 requires the party seeking class certification to "affirmatively demonstrate . . . compliance with the rule—that is he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." Dukes, 131 S. Ct. at 2551. This requires a district court to conduct a "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim." Id.

**III. DISCUSSION**

Section 1198 of the California Labor Code grants the Industrial Welfare Commission the authority to fix "the maximum hours of work and the standard conditions of labor for employees" and makes it unlawful for an employer to violate any orders of the Commission. The California Private Attorney General Act of 2004, California Labor Code § 2698 et seq., ("PAGA"), in turn, permits an "aggrieved employee" to "bring a civil action personally and on behalf of other current or former employees to recover civil penalties for Labor Code violations." Arias v. Superior Court, 46 Cal. 4th 969, 980 (2009) (citing Cal. Labor Code § 2699(a)).

At issue here is Industrial Welfare Commission Order No. 7-2001 ("Wage Order 7-2001"), which applies to "any industry, business, or establishment operated for the purpose of purchasing, selling, or distributing goods or commodities at wholesale or retail." See 8 Cal. Code. Regs. § 11070(2)(H) (codifying Wage Order 7-2001).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-08471-CAS(MRWx) | Date | January 15, 2014 |
|---|---|---|---|
| Title | JESSIKA TSENG V. NORDSTROM, INC. | | |

Plaintiff's sole claim is that defendant violated § 14(A) of this Wage Order, which sets forth certain requirements related to seating:

> (A) All working employees shall be provided with suitable seats when the nature of the work reasonably permits the use of seats.

Id. § 11070(14)(A). Plaintiff contends that Nordstrom does not provide seats to any employees working within the cosmetics departments of the thirty-two Nordstrom stores located within California, in violation of § 14(A).

As the party seeking class certification, plaintiff bears the burden of showing that she has satisfied the requirements of Rule 23, including all four subparts of Rule 23(a) and at least one of the three subparts of Rule 23(b). See Dukes, 131 S. Ct. at 2551 ("A party seeking class certification must affirmatively demonstrate his compliance with the Rule."). Here, however, Nordstrom's opposition does not seriously dispute that plaintiff has satisfied the requirements of Rule 23(a).[1] Instead, Nordstrom devotes essentially all of its opposition to arguing that plaintiff has not met her burden under Rule 23(b)(3) of showing that "questions of law or fact common to class members predominate over any questions affecting only individual members." As such, the Court focuses its analysis of whether to certify plaintiff's proposed class on the question of whether issues common to the class as a whole predominate over individualized issues.

### A. Appropriate Characterization of the Merits Analysis under § 14(A)

To decide whether common issues predominate, the Court must first determine the proper framing of the inquiry into whether Nordstrom violated § 14(A). Nordstrom

---

[1] Specifically, Nordstrom does not dispute numerosity or commonality at all, and disputes typicality and adequacy only in a pair of brief footnotes. See Opp. 4 n.4 & n.5. Nordstrom claims that plaintiff Jessika Tseng is not typical of the proposed class because she has a disability that may affect her need for seating, and that Tseng is not an adequate representative because Nordstrom alleges that it "terminated Tseng's employment for gift card fraud, diversion sales and employee discount abuse." Id. at 4 n.5. In light of the conclusions reached herein regarding predominance, the Court need not resolve the merits of these arguments.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-08471-CAS(MRWx) | Date | January 15, 2014 |
|---|---|---|---|
| Title | JESSIKA TSENG V. NORDSTROM, INC. | | |

interprets § 14(A) to raise a single question of whether an employee's work reasonably permits the use of a seat. Nordstrom argues that this general reasonableness standard will require a fact-intensive, individualized inquiry, and is thus not susceptible of class-wide resolution.

Plaintiff, by contrast, divides the inquiry under § 14(A) into three separate questions, which she contends will collectively determine Nordstrom's liability:

(1) What is the nature of an employer's obligation to provide seats?;

(2) Can Cosmetics Counter Employees' essential tasks be performed while seated?; and

(3) Does the 'nature of the work' of Nordstrom Cosmetics Counter Employees reasonably permit the use of seats?

Reply 7.[2]  Plaintiff additionally proffers a "Proposed Trial Plan," in which she suggests that the Court can adjudicate this case in multiple phases.  Tindall Decl. Ex A.  In the first "Pre-Trial Phase," the Court will answer the first question and "decide as a matter of law the correct interpretation of Wage Order 7-2001 § 14(A)."  Id. at 2.  During the subsequent "Trial Phase," plaintiff proposes that the jury can adjudicate the second and third questions.  Plaintiff contends that all three of these questions are susceptible of class-wide resolution.  It appears that by dividing the inquiry under § 14(A) into multiple

---

[2] In her motion for class certification, plaintiff advanced a fourth allegedly common question: "Does Nordstrom maintain a uniform policy regarding the provision of seating?"  Mot. 13.  Because Nordstrom's opposition did not contest that Nordstrom has a uniform practice of not providing seats, it appears that plaintiff decided to omit this question when enumerating allegedly common questions in her reply.  In any event, the presence of this single common question would not alter this Court's predominance inquiry, which, as discussed below, turns on the need to conduct individualized inquiries into the physical layout of each Nordstrom store.  See Dukes, 131 S. Ct. at 2551 ("What matters to class certification . . . is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." (quotation marks omitted)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-08471-CAS(MRWx) | Date | January 15, 2014 |
|---|---|---|---|
| Title | JESSIKA TSENG V. NORDSTROM, INC. | | |

stages, plaintiff hopes to establish the existence of additional "common questions" susceptible of class-wide resolution. See In re Wells Fargo Home Mortgage Overtime Pay Litig., 571 F.3d 953, 959 (9th Cir. 2009) (describing "the main concern in the predominance inquiry" as "the balance between individual and common issues").

The Court, however, finds Nordstrom's single question of "reasonableness" to be the more persuasive framing of the § 14(A) inquiry. For one, plaintiff does not supply any basis in the text of §14(A) for dividing the inquiry into three stages. Section 14(A) requires employers to provide "suitable seats when the nature of the work reasonably permits the use of seats." This requirement, by its terms, does not make separate reference to an employee's "essential tasks." Nor does plaintiff point to cases in which other courts have divided up the inquiry under § 14(A) in this manner.

Furthermore, closer inspection of plaintiff's three questions reveals that plaintiff's first and second "class-wide questions" are not closely tethered to the issues to be decided in this case. Plaintiff's first question, for instance, asks "What is the nature of an employer's obligation to provide seats?" In plaintiff's view, the Court will need to opine on the general scope of § 14(A) because "the parameters of an employer's § 14(A) seating obligation are largely undefined." Reply 8. Plaintiff reasons that, because delineating the "parameters" of an employer's seating obligation involves the purely legal question of interpreting § 14(A), the Court can conduct that interpretation on a class-wide basis during plaintiff's proposed "Pre-Trial Phase."

The interpretation of § 14(A) in the abstract, however, will not provide a predicate for the class-wide resolution of this case. Instead, resolving this case will ultimately require the Court to apply § 14(A) to the specific factual circumstances of Nordstrom cosmetics departments. In other words, the focus of the Court's inquiry will be plaintiff's third question: whether the 'nature of the work' of Nordstrom Cosmetics Counter Employees reasonably permits the use of seats.

Plaintiff's second "common question" is similarly too general to be of help in deciding this case on a class-wide basis. This second question asks whether Cosmetics Counter Employees' essential tasks can be performed while seated. Plaintiff, however, does not explain how this question should be considered separately from the question of whether those essential tasks reasonably permit the use of seats. Indeed, the latter

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-08471-CAS(MRWx) | Date | January 15, 2014 |
|---|---|---|---|
| Title | JESSIKA TSENG V. NORDSTROM, INC. | | |

question appears to be a logical implication of the former: if a task cannot be performed while seated, that necessarily implies that the task does not reasonably permit the use of a seat. Cf. Garvey v. Kmart Corp., 2012 WL 6599534 ¶ 38 (N.D. Cal. Dec. 18, 2012). As such, deciding whether the nature of plaintiff's work reasonably permits the use of seats—the standard set forth by § 14(A)—will fully determine Nordstrom's liability in this action.

There is thus no need to separately adjudicate the first and second "class-wide questions" identified by plaintiff. Instead, it is plaintiff's third question—which tracks both the language of § 14(A) and Nordstrom's framing of the standard—that is the key inquiry in this case. Put differently, plaintiff's three questions, properly considered, can not be counted as separate "common questions" weighing in the balance between common and individual issues. Accordingly, the Court adopts Nordstrom's approach, and frames the substantive standard under § 14(A) as a single-stage inquiry into whether the nature of the Cosmetics Counter Employee's work reasonably permits the use of seats. Having identified the key question in this case, the Court now turns to whether that question is susceptible of class-wide adjudication.

### B. Class-wide Adjudication of Reasonableness Standard

As this Court previously explained when denying Nordstrom's motion for summary judgment, courts construing § 14(A) have repeatedly interpreted the Wage Order to impose a broad standard that examines the totality of the circumstances of the employees work situation and assigned duties. See dkt. 119 at 4-5; see also Echavez v. Abercrombie & Fitch Co, Inc., 2012 WL 2861348, at *8 (C.D. Cal. Mar. 12, 2012) (stating that "§ 14 requires that employers of all types must provide adequate seating for use by their employees when reasonably permitted by the nature of the employees' work"); Garvey v. Kmart Corp., 2012 WL 1231803, at *3 (N.D. Cal. Apr. 12, 2012) (framing the relevent question as "whether the work of Kmart cashiers reasonably permitted the use of seats").

The need to inquire into the totality of the circumstances is reinforced by an amicus brief filed by the California Department of Industrial Relations, Division of Labor

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-08471-CAS(MRWx) | Date | January 15, 2014 |
|---|---|---|---|
| Title | JESSIKA TSENG V. NORDSTROM, INC. | | |

Standards and Enforcement ("DLSE") in the Garvey case.[3]  See Def.'s Request for Judicial Notice Ex. 4, Amicus Brief of the California Labor Commissioner in Garvey v. Kmart Corp. (N.D. Cal. Dec. 18, 2012).  While the opinion of the DLSE is not binding on this Court, the agency does offer a "body of experience and informed judgment to which courts and litigants may properly resort for guidance."  Brinker Rest. Corp. v. Superior Court, 53 Cal. 4th 1004, 1029 n.11 (2012).  In its amicus brief, the DLSE states, among other things, that it interprets § 14(A) to impose "a reasonableness standard that would fully consider all existing conditions regarding the nature of the work performed by employees."  Def.'s Request for Judicial Notice Ex. 4, at 3.  The DLSE further explains that "[i]n the absence of any language in Section 14 deferring to specific considerations regarding either the nature of the work or the reasonableness of suitable seating, DLSE would consider all available facts and conditions, including, but not limited to the physical layout of the workplace and the employee's job functions, to determine compliance with Section 14 requirements."  Id. at 4.

As a general matter, the fact-intensive nature of the inquiry under § 14(A) counsels against class certification.  Courts routinely deny class certification in employment cases when determining the employer's liability will necessitate inquiring into the specific circumstances of each individual employee.  For example, the court in In re Wells Fargo Home Mortgage Overtime Pay Litig., 268 F.R.D. 604 (N.D. Cal. 2010), declined to certify a wage-and-hour class action because resolving the applicability of various statutory exemptions "would require fact-intensive inquiries into how individual [plaintiffs] performed their job."  Id. at 611.  The court reasoned that these "inquiries would inevitably consume the majority of a trial, and overwhelm the adjudication of common issues."  Id.  Similarly, the Ninth Circuit in Flores v. Supervalu, Inc., 509 F. App'x 593 (9th Cir. 2013), affirmed a denial of class certification in an employment case where the plaintiff employees claimed that their supervisors routinely pressured them to forego meal and rest breaks.  The Ninth Circuit held that "[t]he district court correctly found that this claim required examination of 'a number of human factors and individual idiosyncrasies' having 'little to do with an overarching policy,' and thus failed to satisfy Rule 23(b)(3)."  Id. at 594.

---

[3] "The DLSE is the state agency empowered to enforce California's labor laws, including IWC wage orders."  Brinker Rest. Corp. v. Superior Court, 53 Cal. 4th 1004, 1029 n.11 (2012).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-08471-CAS(MRWx) | Date | January 15, 2014 |
|---|---|---|---|
| Title | JESSIKA TSENG V. NORDSTROM, INC. | | |

In the present case, Nordstrom has supplied considerable evidence that the "existing conditions regarding the nature of the work performed" by Cosmetics Counter Employees varies both store-to-store and employee-to-employee. In particular, Nordstrom argues that the class varies along numerous axes: (1) the varying physical layouts of cosmetic departments in various Nordstrom stores, (2) the varying physical layouts of the cash wraps within those cosmetic departments,[4] (3) the different staffing levels in different cosmetics departments, (4) the different types of seat that would be appropriate for each individual plaintiff, (5) the different job duties and time allocation of each plaintiff, and (6) Nordstrom's context-specific business judgment about whether seats are reasonably permitted by the work performed in each store, cosmetic line, and by each individual class member. Plaintiff responds with a variety of reasons for why these divisions are all irrelevant to the merits inquiry in this case.[5]

After reviewing the evidence and arguments presented by the parties, the Court finds that individualized issues will predominate over common questions due to the physical differences between the various California Nordstrom stores which employ the members of the proposed class. As discussed above, physical layout is a critical factor in determining whether the nature of class members work reasonably permits the use of seats. In Garvey v. Kmart Corp., 2012 WL 6599534 at *3 (N.D. Cal. Dec. 18, 2012), for example, the court's findings of fact and conclusions of law included a detailed "Anatomy of a Front–End Checkout Stand" which set forth the exact configuration and dimensions of Kmart checkout stands. Based on this "Anatomy," the Garvey court conducted a detailed analysis of the feasibility of positioning a seat within the checkout stand:

---

[4] "Cash wraps" refers to a booth or structure containing a fixed cash register and attendant shelves, drawers, and cabinets. Hopkins Decl. ¶ 19.

[5] Plaintiff lodges numerous evidentiary objections to the evidence cited by Nordstrom. After reviewing these objections, it appears that the only objections that bear on evidence relied upon by the Court are objections on the grounds of relevance. These objections are overruled, as that evidence is relevant for the reasons discussed herein. All other objections are overruled as moot.

Case 2:11-cv-08471-CAS-MRW   Document 164   Filed 01/15/14   Page 10 of 18   Page ID #:5511

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-08471-CAS(MRWx) | Date | January 15, 2014 |
|---|---|---|---|
| Title | JESSIKA TSENG V. NORDSTROM, INC. | | |

> If a stool were introduced in the "box" area occupied by the cashier—which area measures only 27 inches by 35 inches—the stool would be an obstacle course in moving back and forth from the cash register to the bagging area with respect to those tasks that concededly would have to be done while standing. The Court concludes and finds that this would inevitably lead to stumbles as the cashier hustled from one end of the box to the other. It would be unsafe.

Id. ¶ 38.

In similar fashion, deciding whether the work of the proposed class members "reasonably permits" the use of seats within Nordstrom cosmetics departments will require a detailed, fact-intensive inquiry into the layout of each store's cosmetics department. Nordstrom, for example, offers some evidence that, in certain configurations, the physical dimensions of cosmetics bays are not compatible with the placement of a seat: "[w]hen placed at the cash wrap as Tseng requests, the seat . . . (1) does not leave room for Cosmetics Sales Employees to pass; (2) obstructs access to drawers and supplies; and (3) does not permit sufficient leg clearance for an employee to sit." Opp. 9 (footnotes omitted).

Plaintiff dismisses this evidence as going to the merits of the claim, rather than the issue of class certification. As an initial matter, deciding whether to certify a class frequently "overlap[s] with the merits of the plaintiff's underlying claim." Dukes, 131 S. Ct. at 2551. More fundamentally however, the relevance of Nordstrom's evidence at this stage is not to show that Nordstrom complied with § 14(A). Instead, this evidence bears on class certification because it illustrates how adjudicating whether Nordstrom violated § 14(A) will depend on fact-intensive questions involving the precise layout and dimensions of Nordstrom cosmetic departments. In Garvey, this need to conduct a detailed investigation did not preclude class treatment because the class members all worked at a single store, and that store "had the same or very similar configurations at all registers." Garvey v. Kmart Corp., 2012 WL 2945473 (N.D. Cal. July 18, 2012). Here, by contrast, members of the proposed class work at thirty-two separate Nordstrom stores across California.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-08471-CAS(MRWx) | Date | January 15, 2014 |
|---|---|---|---|
| Title | JESSIKA TSENG V. NORDSTROM, INC. | | |

    Nordstrom further asserts—and plaintiff appears not to controvert—that the physical layout of Nordstrom cosmetic bays and cash wraps vary widely from store to store. Among the thirty-two California Nordstrom locations, the cosmetic departments range in size from 3,025 square feet to 8,100 square feet. Hopkins Decl. ¶ 6. Some of these cosmetics departments are structured in an "enclosed bay" format, in which a cosmetics are displayed in a series of glass cases. These cases are arranged to enclose an internal, employees-only area, which sometimes also contains a center island. Id. ¶¶ 8-9. Other cosmetics departments are structured in an "open sell" format, with cosmetics sold on walls or shelves directly accessible to the customer. Id. ¶ 22. Still other cosmetic departments are arranged in some combination of the enclosed bay and open sell formats. Id. ¶ 8.

    The specific physical dimensions of cosmetics departments also vary from store to store. The width of aisles in cosmetics departments range from 23.5 inches in some stores to 62 inches in others. Fernandez Decl. ¶ 27. The width of the entries to the enclosed bays ranges from 23 inches to 42.5 inches. Counter heights vary from 14 inches to 42.5 inches. Id. Bays are often shaped differently, with squares, rectangles, ovals, or other configurations. Hopkins Decl. ¶ 6. The configurations of individual bays are often customized to comply with specific vendor requirements. For instance, certain vendors require Nordstrom to attach fixtures and displays to cosmetic bays displaying that vendors' cosmetics. Id. ¶ 11-12. These vendor requirements, in turn, can range widely from store to store because not all California Nordstrom locations carry the same brands of cosmetics. Id. ¶ 10.

    In addition to staffing the cosmetics display areas, members of the proposed class also operate the "point-of-sale" (POS) machines at which cosmetics are actually purchased. These POS machines include both traditional cash registers, enclosed within cash wrap stands, as well as "mobile POS" machines, in which products are purchased using hand-held devices. Id. ¶ 25. Some stores use mobile POS machines exclusively, while others rely on various ratios of mobile POS and traditional cash registers. Id. ¶ 26. In stores that use traditional cash registers, the configuration of those registers and their surrounding cash wraps varies considerably. Some cash wraps contain only a single register, while others contain multiple registers. Some cash wraps have shelves and drawers mounted below the counter, while others place the shelves and drawers behind the person operating the register. Id. ¶ 20.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-08471-CAS(MRWx) | Date | January 15, 2014 |
|---|---|---|---|
| Title | JESSIKA TSENG V. NORDSTROM, INC. | | |

    Because these layouts and dimensions vary so widely from store to store, adjudicating this case would require, in effect, a separate mini-trial for each California Nordstrom store.[6] For each of these mini-trials, the finder of fact would have to conduct a detailed analysis of the physical layout of the individual store and determine whether

---

[6] Deposition testimony from plaintiff's ergonomics expert Jeff Mastin further illustrates that adjudicating this case would require separate store-by-store factfinding. When asked whether he could identify which cosmetics counters should be accompanied by stools, Mr. Mastin testified as follows:

> Q: If you were asked . . . to identify each counter in each of the 32 California Nordstrom's cosmetics departments at which a seat ought to be provided, . . . that would require further study. . . consisting of further site visits at each of the stores?
>
> [Colloquy between counsel omitted]
>
> A: That would be accurate if the goal was to define every single counter where it should be used. . . . That type of tabulation would require more study . . .
>
> Q: And more study in physically inspecting each of the stores in which the question regarding seating is posed?
>
> A: For that type . . . of definitive, all-inclusive tabulation, yeah. I don't think you'd have any choice except to go out and do that in more detail, taking more time.
>
> Q: In each store and going counter by counter?
>
> A: Yeah, if you're asking for a definitive 100 percent tabulation, yeah, you need to visit.

Messiha Decl. Ex. G (Mastin Depo.), 244:6-245:10.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-08471-CAS(MRWx) | Date | January 15, 2014 |
|---|---|---|---|
| Title | JESSIKA TSENG V. NORDSTROM, INC. | | |

the work of cosmetics employees within that store "reasonably permits the use of seats." Under such circumstance, class certification is not appropriate because numerous mini-trials would be required to adjudicate this case.

Other courts have reached similar conclusions when confronted with the prospect of mini-trials being required to resolve core liability issues at the center of the litigation. The court in In re Graphics Processing Units Antitrust Litig., 253 F.R.D. 478 (N.D. Cal. 2008), for example, declined to certify a class of indirect purchasers of components in computers sold to class members. These indirect purchasers asserted they had been overcharged due to illegal price-fixing. The court reasoned that, although the direct purchasers had been injured because they had purchased the components at an inflated price, each indirect purchaser would have to prove that they were harmed by direct purchaser passing through the inflated price to them. As such, in the absence of a means of proving pass-through injury by common methods pf proof in light of the circumstances presented in the case, "the only way to fully assess pass-through . . . would be to conduct a wholesaler-by-wholesaler and re-seller-by-re-seller investigation, which would essentially result in thousands of mini-trials, rendering this case unmanageable and unsuitable for class action treatment." Id. at 505 (quotation marks omitted); see also Pryor v. Aerotek Scientific, LLC, 278 F.R.D. 516, 536 (C.D. Cal. 2011) ("Pryor has given the court no reason to believe that if a class were certified, hundreds of mini-trials on the issues necessary to determine if Aerotek underpaid employees would not be required. The court therefore determines that individual questions predominate over common ones."); Flores v. CVS Pharmacy, Inc., 2010 WL 3656807 (C.D. Cal. Sept. 7, 2010) ("The finder of fact in this case would inevitably have to engage in individual mini-trials to separate the class members from non-class members."). Similarly, the only way to fully assess whether the work performed by the potential class members in each Nordstrom store reasonably permits the use of seats would be to conduct a series of store-by-store mini-trials. As such, the Court finds that store-specific (and thus plaintiff-specific) issues predominate over class-wide issues.

Plaintiff resists this conclusion on several grounds. First, plaintiff argues that physical differences between stores are irrelevant because Nordstrom has not shown that these differences have an effect on the range of duties of the proposed class members. Instead, plaintiff contends, all class members sell cosmetics, provide customer service, restock, clean, speak with customers, and write thank you notes, regardless of differences

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-08471-CAS(MRWx) | Date | January 15, 2014 |
|---|---|---|---|
| Title | JESSIKA TSENG V. NORDSTROM, INC. | | |

in physical layout. Because these tasks "make up 'the nature of the work'" under § 14(A), plaintiff argues that adjudicating Nordstrom's liability under § 14(A) does not turn on specifics of physical layout. Reply 16.

The Court finds this argument unpersuasive. Even assuming that class members do all share similar duties—a contention that Nordstrom vigorously disputes—physical layout is still relevant to whether the performance of those duties "reasonably permits" the use of seats. In Garvey, for instance, the court did not limit its factfinding to determining the list of tasks performed by Kmart cashiers. Instead, the court went on to conduct a thorough investigation of whether those tasks could reasonably be performed while seated, given the physical environment of a Kmart cashier stand. Similarly, the factfinder here would have to make detailed determinations about whether the tasks of Cosmetics Counters Employees could reasonably be performed while seated, in light of the physical layout of each individual Nordstrom store.

Second, plaintiff contends that the differences in physical layout is irrelevant if § 14(A) imposes a duty on employers to remodel. If § 14(A) does impose such a duty, plaintiff reasons that Nordstrom's obligation to provide seating does not turn on the present configuration of its stores. Plaintiff does not argue directly that § 14(A) imposes a duty to remodel. Instead, plaintiff suggests that this Court can decide the existence and scope of such a duty on a class-wide basis, and that this determination presents yet another common question of law weighing in favor of class certification.

Again, the Court finds this argument unpersuasive. Assuming arguendo that § 14(A) does create a duty to remodel, that duty would not eliminate the need for store-by-store factfinding. If, for instance, a duty to remodel is to be decided by a balancing test that weighs the burden of remodeling against the duty to provide seating, then analyzing that duty to remodel will still require a store-by-store analysis of the hardship of remodeling any given Nordstrom location. Only in the event that the duty to remodel is so unequivocal as to require remodeling each and every work area no matter the cost, would that duty arguably eliminate the individualized issues in this case. But section 14(A) imposes a broad reasonableness standard, which, as the DLSE explains, "consider[s] all available facts and conditions, including, but not limited to the physical layout of the workplace." Def.'s Request for Judicial Notice Ex. 4, at 4. As such, even if it is assumed that Nordstrom does have some obligation to remodel its stores to comply

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-08471-CAS(MRWx) | Date | January 15, 2014 |
|---|---|---|---|
| Title | JESSIKA TSENG V. NORDSTROM, INC. | | |

with § 14(A), the existence of that duty does not cause common issues to predominate in this case.

Lastly, plaintiff cites two § 14(A) cases in which courts certified classes despite variation in store layout and configuration. In Allen v. AMC Entertainment, Inc., the Alameda County Superior Court certified a class of theater employees who divided their time between working in the box office and performing other duties around the theater.[7] The Allen court rejected AMC's contention that certification was precluded by variation in physical layout:

> Although Defendant's witnesses contend that the physical layout of a theater's box office dictated how often a box office employee would need to get up and walk to another part of the office, e.g. to answer the phone, obtain promotional materials, etc.) the examples provided are isolated, and the declarations are highly conclusory. Defendant did not provide evidence of box office layouts that would show a need for some Box Office employees, but not others, to stand and/or walk. Nor did Defendant provide any evidence showing how often activities other than selling tickets occurred, or whether it occurred more often in some box offices than others. Thus, Defendant has not shown any substantial variation across the class.

Pls. Supp. RJN, Ex. 2, at 5. Setting to one side the fact that Allen was decided under the class certification standard of Cal. Code Civ. Proc § 382, rather than Fed. R. Civ. P. 23, this reasoning is inapposite here. First, the analysis quoted above discussed whether the plaintiffs had met their burden of showing commonality, rather than whether the plaintiffs had met the "far more demanding" predominance standard.[8] Amchem Products,

---

[7] A copy of the order in Allen is attached as Exhibit 2 to plaintiff's supplemental Request for Judicial Notice.

[8] The Allen court's predominance analysis is set forth below:

> Common legal and factual issues predominate over individualized ones. As such, the benefits of litigating Plaintiff's claims on a class basis

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-08471-CAS(MRWx) | Date | January 15, 2014 |
|---|---|---|---|
| Title | JESSIKA TSENG V. NORDSTROM, INC. | | |

Inc. v. Windsor, 521 U.S. 591, 624 (1997).  Second, Allen focused on how the physical layout affected the duties of class-member employees, and concluded that AMC had not produced sufficient evidence that variations in layout produced variations in those duties. Here, by contrast, the difficulty with plaintiff's proposed class is not simply that Cosmetics Counter Employees have different duties in different stores, but rather that variations in layout affect whether the performance of those duties within each Nordstrom store "reasonably permit[s]" the use of seats.

Plaintiff also cites Brown v. Wal-Mart Stores, Inc., 2012 WL 3672957 (N.D. Cal. Aug. 24, 2012), in which the district court certified a class of Wal-Mart cashiers who had not been provided seating.  The district court rejected Wal-Mart's argument that individual issues prenominated because there were "twelve different configurations for the checkout register areas in the 180 California Wal–Mart stores and the configuration would affect whether there could be suitable seating."  Id. at *6.  The Brown court rejected this argument for two reasons.  First, Walmart's 30(b)(6) designee testified at deposition that "regardless of the location or configuration of the cash register station or the checkout lane, the job duties of all California cashiers are the same, Wal–Mart's expectations regarding the type of work that cashiers perform are the same, the physical activities that they perform are the same, and the essential functions of their position are

> appear to be great. Doing so will obviate the uncertainty of the consequences of trying representative PAGA claims without certifying a class of those represented, as well as the far greater burden that many individual trials on substantially the same issues would impose on the State (either in state court or before the DLSE).  The law recognizes that employees may be reluctant to pursue Plaintiff's claims, and here there is no evidence that any other class member has filed a similar claim. Finally, few, if any, material, individualized issues have been identified by Defendant; any such issues could be managed by using one or more of the "innovative tools" that have been approved by California courts.

Pls. Supp. RJN, Ex. 2, at 5.  Because many of these "innovative tools" are unavailable within the bounds of Fed. R. Civ. P. 23, the Court finds that Allen's predominance reasoning is inapposite here as well.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-08471-CAS(MRWx) | Date | January 15, 2014 |
|---|---|---|---|
| Title | JESSIKA TSENG V. NORDSTROM, INC. | | |

the same." Id.  Second, the district court noted that many of the register variants were only used at outlying register locations that were primarily operated by Wal-Mart employees who fell outside the proposed class.  Id.

The Court finds Brown to be inapposite here.  First, the Brown court excluded much of Wal-Mart's evidence of class variation pursuant to Fed. R. Civ. P. 37 for unrelated discovery violations.  Here, by contrast, Nordstrom has tendered substantial evidence regarding the layout differences between Nordstrom's thirty-two California stores.  Second, the layouts of the thirty-two Nordstrom stores appear to exhibit a much greater range of variation than the twelve registers at issue in Brown.  Lastly, Brown's reasoning that class members did not use many of the register variants finds no analogy here, where the proposed class includes every employee who works in any California Nordstrom cosmetics department.

Accordingly, the Court concludes that the differences between the physical layout of Nordstrom's thirty-two California location provide a sufficient basis to conclude that common issues do not predominate over individualized issues.  As such, plaintiff has not met her burden of showing that the proposed class satisfies the requirements of Fed. R. Civ. P. 23.  In light of this conclusion, the Court need not reach Nordstrom's other arguments regarding predominance, such as its contention that variations in stature between employee would affect whether that employees work "reasonably permits the use of a seat."

### C. Representative Action under California Private Attorney General Act

Plaintiff also argues that, because she is proceeding under PAGA, she need not certify a class under Fed. R. Civ. P. 23 in order to pursue a representative action.  The issue of whether PAGA actions must comply with Rule 23 has divided the courts.  See Alcantar v. Hobart Serv., 2013 WL 146323 (C.D. Cal. Jan. 14, 2013) ("[T]here is a split of authority among the district courts as to whether Rule 23 class certification is required for maintenance of a PAGA claim in federal court.").  However, the Court need not resolve this issue now, when the only question before the Court is whether plaintiff has complied with the requirements of Rule 23.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-08471-CAS(MRWx) | Date | January 15, 2014 |
|---|---|---|---|
| Title | JESSIKA TSENG V. NORDSTROM, INC. | | |

## IV.    CONCLUSION

In accordance with the foregoing, plaintiff's motions for class certification and for appointment as class counsel are hereby DENIED. In light of the Ninth Circuit's recent certification of several questions concerning the interpretation of § 14(A) to the California Supreme Court, see Kilby v. CVS Pharmacy, Inc., 2013 WL 6908934 (9th Cir. Dec. 31, 2013), this denial is without prejudice.

IT IS SO ORDERED.

|  |  | 00 | : | 00 |
|---|---|---|---|---|
|  | Initials of Preparer | | CMJ | |