JULIE A. DUNNE, Bar No. 160544
jdunne@littler.com
JOSHUA D. LEVINE, Bar No. 259405
jdlevine@littler.com@littler.com
LITTLER MENDELSON, P.C.
501 W. Broadway, Suite 900
San Diego, CA  92101.3577
Telephone: 619.232.0441
Facsimile:  619.232.4302


Attorneys for Defendant
NORDSTROM, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSIKA TSENG, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NORDSTROM, INC., and Does 1 through 50, inclusive,<br><br>Defendants. | Case No. 11-CV-08471 CAS (MRWx)<br><br>**DEFENDANT NORDSTROM, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO CLARIFY RECORD AND RECONFIRM APPROVAL OF PAGA SETTLEMENT**<br><br>Date:        January 28, 2019<br>Time:        10:00 a.m.<br>Judge:       Hon Christina A. Snyder<br>Ctrm:        8D |

# TABLE OF CONTENTS

**PAGE**

I.   INTRODUCTION .................................................................................. 1

II.  RELEVANT FACTS AND PROCEDURAL HISTORY...................................... 4

    A.   The Court Denied Tseng's Motion For Class Certification And
Concluded That Tseng Could Not Prosecute Her PAGA Claim On
Behalf Of  All Cosmetic Sales Employees Statewide ............................ 5

    B.   Settlement Discussions Facilitated By Judge Gandhi Culminated In
The Settlement Agreement...................................................................... 6

    C.   The Settlement Agreement Was Not Conditioned On The Number
Of Affected Employees, The Number of Pay Periods At Issue Or
On A Specific Pay Period Value.............................................................. 7

    D.   Tseng's Counsel Prepared The Motion For Approval Of The
Settlement................................................................................................ 9

    E.   The Court Approved The Settlement Agreement ................................. 11

    F.   Tseng's Counsel Approved Administration Of The Settlement
Based On The Final Counts Of Covered Employees And Pay
Periods.................................................................................................... 11

    G.   Nordstrom Learns Of Concerns Regarding The Accuracy Of The
Information Provided To This Court In Connection With Tseng's
Motion for Approval Of The Settlement .............................................. 13

III. THE COURT SHOULD APPROVE A PAGA SETTLEMENT WHERE,
AS HERE, THE SETTLEMENT IS FAIR, ADEQUATE, AND
REASONABLE AND PROMOTES THE PURPOSES OF PAGA................. 14

    A.   The Settlement Is Justified In Light Of The Significant Hurdles
Tseng Faced To Manageably Litigate Her Seating Claim And
Overcome Nordstrom's Defenses On The Merits ................................. 15

        1.   The Court's Prior Rulings Created A Significant Risk That
The Court Would Find That Tseng Could Not Manageably
Pursue Her Seating Claim On A Representative Basis ............... 15

        2.   There Was Also A High Risk That Tseng's Claims Would
Fail On The Merits Given The Strength Of Nordstrom's
Defenses.......................................................................................... 16

    B.   Even If Tseng Had Succeeded In Bringing Her PAGA Seating
Claim, There Is A High Likelihood The Court Would Have
Exercised Its Discretion To Significantly Reduce Any PAGA
Penalties Award .................................................................................... 19

IV.  CONCLUSION ................................................................................... 21

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Aguirre v. Genesis Logistics*,
   2013 U.S. Dist. LEXIS 189820 (C.D. 2013) ........................................ 20

*Bruce v. Del Monte Foods, Inc.*,
   2018 U.S. Dist. LEXIS 53800 (N.D. Cal. Mar. 29, 2018) ......... 14, 18, 19

*Fleming v. Covidien, Inc.*,
   2011 U.S. Dist. LEXIS 154590 (C.D. Cal. 2011) ............................... 20

*Gomez v. J. Jacobo Farm Labor Contr., Inc.*,
   188 F. Supp. 3d 986 (E.D. Cal. 2016) ............................................. 17

*Hamilton v. State Farm Fire & Cas.Co.*,
   270 F.3d 778 (9th Cir. 2001) ....................................................... 18

*Juarez v. Villafan*,
   2017 U.S. Dist. LEXIS 137205 (E.D. Cal. 2017) ............................. 19

*Kilby v. CVS Pharmacy, Inc.*,
   63 Cal. 4th 1 (2016). ............................................................. 6, 17

*Ortiz v. Hobby Lobby Stores, Inc.*,
   52 F. Supp. 3d 1070 (E.D. Cal. 2014) ........................................... 16

*Reyes v. Macy's, Inc.*,
   202 Cal. App. 4th 1119 (2011) .................................................... 16

*Salazar v. Sysco Cent. Cal., Inc.*,
   2017 U.S. Dist. LEXIS 14971 (E.D. Cal. 2017)
   ..................................................................... 14, 15, 18, 19

*Williams v. Superior Court*,
   237 Cal. App. 4th 642 (2015) ..................................................... 16

**Statutes**

Cal. Lab. Code § 2699(e)(2) ...................................................... 20

## I.   INTRODUCTION

Plaintiff Jessika Tseng ("Tseng") filed this action on September 9, 2011, asserting a single claim for alleged failure to provide suitable seating under the California Private Attorney General Act ("PAGA").   The parties subsequently engaged in extensive litigation spanning over six years.   The parties attended two settlement conferences, and after lengthy, arms-length negotiations overseen by former U.S. Magistrate Judge Jay C. Gandhi[1], the parties' reached a settlement in July 2017.   This Court approved the parties' PAGA settlement on January 8, 2018, but "reserve[d] exclusive and continuing jurisdiction over the lawsuit for the purposes of supervising the implementation, enforcement, construction, administration, and interpretation of the Settlement Agreement and this Judgment."   (Doc. 252 [1/8/18 Order].)

In connection with Nordstrom's attempt to resolve another, related matter, questions arose regarding whether Tseng's Motion for Approval of the Settlement provided incorrect information, including whether the declaration supporting the Motion for Approval contained an inaccurate estimate of pay periods covered by the Settlement.[2]   Nordstrom investigated and confirmed that the estimated statewide pay period count provided in Tseng's counsel's supporting declaration was inaccurate. Consequently, the estimated settlement valuation provided in Tseng's Motion for Approval could lead to an incorrect inference regarding the per-pay-period value represented by the Settlement.

Although Nordstrom did not file any pleadings in connection with Tseng's Motion for Approval, Nordstrom files this motion out of an abundance of caution to

---

[1] At the time that the parties' settlement was reached, Judge Gandhi was an active U.S. Magistrate Judge for the Central District of California.  He has since retired and now works as a private mediator.

[2] The issue arose in the context of mediation discussions in a separate matter.  The discussions are therefore covered by a mediation confidentiality agreement, and thus, the details of the discussions are not included in this Motion.

ensure the Court has a full and final accounting of the Settlement and to ask that the Court re-affirm its order approving the Settlement on the following grounds:

- The Settlement Agreement by its own terms is not based on employee headcount, pay period counts, or a pay period valuation;

- The Settlement Administrator provided Tseng's counsel with the final employee count, the final pay period count, the minimum payment to Affected Employees and the maximum payment to Affected Employees before administering the Settlement, and specifically asked Tseng's counsel (*i.e.*, counsel for the 'deputized' PAGA representative of the State) for authorization to administer the Settlement based on that information. Tseng's counsel approved administration of the Settlement.

- The Settlement Administrator's weekly reports regarding the administration of the Settlement provided to the parties confirmed that payments had been mailed to 8,413 employees and further reported the amount of settlement checks that Affected Employees had cashed.[3]

- Section "D" of the Settlement Agreement specified the tasks that the Settlement Administrator was required to complete in order to administer the Settlement. Paragraph 34 of Section D specified that Tseng's counsel must file a declaration from the Settlement Administrator, confirming the Settlement was fully and properly administered, which Tseng's counsel filed on October 17, 2018. (Doc. 253.)

- The Settlement allowed for prompt payments to the Labor and Workforce Development Agency ("LWDA") and Affected Employees that were completed in March 2018 and avoided the need to potentially wait years for the case to be resolved through further litigation, including on appeal from any trial determination.

---

[3]  Declaration of Julie Dunne ("Dunne Decl."), ¶ 5, Ex. C (Reports dated 3/30/18-5/25/18).

LITTLER MENDELSON, P.C.
501 W. BROADWAY
SUITE 900
SAN DIEGO, CA  92101.3577
619.232.0441

2.

- Tseng's negotiation of an agreement requiring Nordstrom to pay $995,000, plus the cost of administration, to resolve the PAGA seating claim at issue represented a significant recovery in light of the risk that Tseng would recover $0 if she continued to litigate the lawsuit:
  - The Court had already denied Tseng's motion to prosecute her PAGA seating claim on a class action basis;
  - In the context of Nordstrom's Motion to Strike Tseng's PAGA Representative Action Claims, the Court had already concluded it was "obvious" Tseng could not prosecute her PAGA claim on behalf of all Nordstrom Cosmetic sales employees statewide, but allowed her to file a motion attempting to establish that she could prosecute the seating claim on behalf of a narrower subgroup of Cosmetic sales employees;
  - Tseng filed a motion asking for permission to prosecute her seating claim either on behalf of the Cosmetic sales employees who worked at allegedly "functionally equivalent" counters and cash wraps or, alternatively, on behalf of only those Cosmetic sales employees who worked at the same three counters and cash wraps at which Tseng previously worked;
  - Nordstrom opposed Tseng's motion, establishing why Tseng could not manageably prosecute her seating claim on behalf of any subgroup of Cosmetic sales employees;
  - The parties agreed to settle the case on the eve of the hearing for Tseng's motion to prosecute her seating claim on behalf of a narrower subgroup of employees, and if her motion failed, Tseng potentially stood to recover nothing on behalf of the LWDA and the allegedly aggrieved employees she sought to represent in the litigation.
  - Even if Tseng had been permitted to prosecute her seating claim on behalf of a narrower subgroup of Cosmetics sales employees, Nordstrom

1    had strong defenses to her seating claim, and there was a substantial risk
2    Tseng would lose on the merits of her claim, resulting in no recovery for
3    the LWDA or the allegedly aggrieved employees Tseng sought to
4    represent; and

5    o   In the event that Tseng did prevail, the Court had discretion to
6    significantly reduce the PAGA award, especially given prior Opinion
7    Letters by the Division of Labor Standards Enforcement ("DLSE") and
8    Industrial Welfare Commission ("IWC") dating back to the mid-1980's
9    which stated that the nature of retail salespeople's work did not
10   reasonably permit the use of seats.

11       For these reasons, as more fully explained below, Nordstrom respectfully
12   requests that this Court re-confirm its approval of the parties' PAGA Settlement.

13   **II.    RELEVANT FACTS AND PROCEDURAL HISTORY**

14       Jessika Tseng is a former Nordstrom Cosmetic sales employee who filed this
15   action in Los Angeles Superior Court on September 9, 2011, alleging a single PAGA
16   cause of action based on her suitable seating theory.  (Doc. 1)  Specifically, Tseng
17   alleged that the nature of Nordstrom Cosmetic sales work reasonably permits sitting,
18   and that Nordstrom failed to provide suitable seats to all Nordstrom Cosmetic sales
19   employees in California as required by California Wage Order 7 section 14(A).
20   Nordstrom subsequently removed the case to this Court.  (*Id.*)  On July 23, 2012,
21   Tseng amended her Complaint to style it as a class action under Rule 23, brought on
22   behalf of "all others similarly situated."  (Doc. 48 [First Amended Complaint].)
23   Specifically, Tseng alleged that "Plaintiff's [suitable seating] claims [are] typical of
24   the claims of the other Class Members" and that "Defendant's common course of
25   unlawful conduct [] caused Plaintiff and Class Members to sustain the same or similar
26   injuries and damages caused by the same common policies, practices, and decision of
27   Defendant."  (*Id.* at ¶ 12.)

28

**A.     The Court Denied Tseng's Motion For Class Certification And Concluded That Tseng Could Not Prosecute Her PAGA Claim On Behalf Of All Cosmetic Sales Employees Statewide**

On August 23, 2013, Tseng filed a Motion for Class Certification, which this Court denied on January 15, 2014, concluding that variations among Nordstrom Cosmetics departments in California precluded class treatment.  (Doc. 164 [*Tseng* Order Denying Class Cert.] at 9.)  In doing so, this Court found that ***Nordstrom "supplied considerable evidence that the existing conditions regarding the nature of the work performed by Cosmetics Counter Employees varies both store-to-store and employee-to-employee*.**"  (*Id.* [emphasis added]; *see also* Doc. 249-5, Ex. A [Settlement Agreement], ¶ 21 [detailing the procedural history of the case, including that class certification was denied, in section of the Settlement Agreement laying out the key events leading up to the Settlement and the parties' reasons for settling] .)

On September 8, 2016, Nordstrom filed a Motion for Judgment on the Pleadings, arguing that Tseng could not manageably litigate a PAGA "representative" seating claim on behalf of all Cosmetic sales employees in the state.  ***The district court agreed that Tseng could not represent all Cosmetic sales employees statewide,*** but the Court afforded Tseng an opportunity to prove whether her seating claim could be litigated on behalf ***any*** subset(s) of Cosmetic sales employees.  In doing so, the Court emphasized the differences among Nordstrom's Cosmetic sales employees:

> ***[W]e have to put the burden on the plaintiff*** to figure out and set forth what people the plaintiff seeks to represent because ***I agree with [Nordstrom] she can't respect [sic, represent] every single Nordstrom employee in every single cosmetics department across the state***.  ***That's obvious***.  She has a higher burden.  And that's exactly what I'm asking the plaintiff to do[,] come forward and meet that burden.

(Dunne Decl., ¶ 2, Ex. A [12/19/16 *Tseng* Hrg.] at 10:8-14 [emphasis added].)

In response, Tseng filed a Motion for an Order Defining the Scope of Plaintiff's PAGA Claim ("Motion to Define the Scope") on March 13, 2017. (Doc. 219.) Recognizing the significant variation in the layout at Nordstrom's Cosmetics counters, Tseng requested that the Court "define the group of employees on whose behalf the PAGA trial will go forward as those Nordstrom [Cosmetic sales employees] who worked at either the counters and cashwraps where [Tseng] worked [*at only 3 stores*] or the counters and cashwraps that are functionally virtually identical to these…." (Doc. 219 [Tseng Motion, p. 2]; Doc. 249-4 [explaining that there are 85 cosmetics counters and 25 cash wraps that are functionally identical].)  Nordstrom opposed Tseng's motion, establishing that Tseng could not manageably prosecute her PAGA "representative" seating claim even on behalf of the proposed narrower subgroups of employees under *Kilby v. CVS Pharmacy, Inc.*, 63 Cal. 4th 1 (2016).  (Doc. 228 [Opp. to Mot. to Define Scope].)

**B.  Settlement Discussions Facilitated By Judge Gandhi Culminated In The Settlement Agreement**

While Tseng's Motion to Define the Scope of her Claims was still pending, the parties reached a settlement that completely resolved Tseng's PAGA seating claim on behalf of herself and all other current and former Cosmetic sales employees who worked for Nordstrom in California from September 9, 2010 through the date the Court approved the settlement on January 8, 2018.  (Doc. 252 [1/8/18 Order], Doc. 249-5, Ex. A [Settlement Agreement].)

The parties reached the settlement after two separate settlement conferences with Judge Gandhi, six years of litigation, and extensive discovery and motions practice.  The first settlement conference occurred on April 2, 2014, lasted a full day, and did not result in a settlement.  (Doc. 172.)  The second settlement conference occurred on June 28, 2017 and also lasted a full day.  (Doc. 243.)  Again, the case did not immediately settle at the June 28, 2017 conference, but subsequent negotiations directly overseen by Judge Gandhi did result in the parties reaching a settlement in

principle on July 21, 2017.  The parties filed a Notice of Settlement on that same date.[4]  (Doc. 245.)  Notably, the settlement was reached three days prior to the hearing on Plaintiff's Motion for an Order Defining the Scope of Plaintiff's PAGA Claim.  (Doc. 242; *see also* Doc. 249-5 [Settlement Agreement], ¶ 21(i) [noting that the Parties agreed to settle this Action while Tseng's Motion for an Order Defining the Scope was still pending].)  Had the case not settled, the Court could have denied Tseng's motion for permission to represent any other group of Cosmetic sales employees, thus rendering her PAGA action entirely moot.

### C. The Settlement Agreement Was Not Conditioned On The Number Of Affected Employees, The Number of Pay Periods At Issue Or On A Specific Pay Period Value

On December 4, 2017, the parties executed a formal Settlement Agreement.  The Settlement Agreement obligated Nordstrom to pay $995,000, plus the cost of administration.  (Doc. 249-5, Ex. A [Settlement Agreement], ¶¶ 20, 32.)  The parties agreed to allocate the $995,000 as follows: (1) $487,500 for PAGA penalties, to be distributed 75% ($365,625) to the LWDA and 25% ($121,875) to employees covered by the Settlement (*i.e.*, the Individual Settlement Allocation); (2) $497,500 for attorney fees and costs; and (3) $10,000 for an incentive award for Tseng.  ***The Settlement Agreement was not conditioned on the number of employees covered by the Settlement, the number of pay periods covered by the Agreement, or on a specific pay period value***.[5]  (Doc. 252 [1/8/18 Order]; Doc. 249-5, Ex. A [Settlement Agreement].)

---

[4] Due to the privileges protecting mediation and settlement discussions, the specific content of the discussions facilitated by Judge Gandhi leading up to the Settlement are not discussed here.

[5] The Settlement Agreement only referred to pay periods when describing how the settlement proceeds should be apportioned to Affected Employees.  The Agreement stated that the Affected Employees' payments would be "based on the number of Qualifying Pay Periods worked by each Affected Employee during the PAGA Period."  (Doc. 249-5, Ex. A [Settlement Agreement], ¶ 36(a)(ii).)

The parties also memorialized their respective reasons for settling in the Settlement Agreement, stating:

24. Based on the foregoing data and on its own independent investigation and evaluation, PAGA Counsel is of the opinion that the Settlement for the consideration and on the terms set forth in this Stipulation of Settlement is fair, reasonable, and adequate and is in the best interest of the Affected Employees in light of all known facts and circumstances, ***including the risk of significant delay and uncertainty associated with litigation, the various defenses asserted by Defendant, and the numerous potential appellate issues***.

25. Defendant has likewise concluded that it is desirable that the Action be settled in a manner and upon such terms and conditions set forth herein in order to avoid further expense, inconvenience and distraction of further legal proceedings, and the risk of the outcome of the Action. Therefore, although it vigorously denies that the Action has any merit, Defendant has determined that it is desirable and beneficial to put to rest the claims in the Action. Defendant agrees the Settlement is fair, reasonable, and adequate.

(Doc. 252 [1/8/18 Order], Doc. 249-5, Ex. A [Settlement Agreement], ¶¶ 24-25 [emphasis added].)

Notably, in these paragraphs – which specify the parties' reasons for settling – there is no mention of the Settlement Agreement being reached on the basis of the number of employees covered by the Settlement, the number of pay periods covered by the Settlement or on a specific pay-period valuation.

Moreover, the parties agreed upon a notice to be provided to Affected Employees that explained why they were receiving a settlement check. (Doc. 249-6 Ex. 1 to Settlement [Approved PAGA Settlement Notice].) The Notice stated only:

You are receiving this Notice because of a lawsuit brought by a former California Nordstrom Cosmetics employee, Jessica Tseng ("Plaintiff"), for civil penalties pursuant to the Private Attorneys General Act, Labor Code § 2698 et seq. ("PAGA"). Plaintiff claimed that she and other Nordstrom California Cosmetics employees were entitled to seats while working on the sales floor during their employment with Nordstrom.

Nordstrom denies these claims and denies that it owes any penalties, but to avoid further time and expense in litigation, Nordstrom and Plaintiff have agreed to settle the case. The settlement resolves the claims asserted in the lawsuit on behalf of all Nordstrom Cosmetic Sales Employees who worked in California between September 9, 2010 and [January 8, 2018]. ("Affected Employees").

According to Nordstrom's records, you are an Affected Employee and are therefore entitled to a share of the settlement. Enclosed with this Notice is your settlement check. The settlement check shall remain valid for one hundred eighty (180) days.

(*See* Doc. 249-5, Ex. A [Settlement Agreement], Doc. 249-6 Ex. 1 to Settlement [Approved PAGA Settlement Notice].) ***The Notice accompanying the payment checks to Affected Employees did not include any specified or estimated pay period number or amount.*** (*Id.*)

### D.   Tseng's Counsel Prepared The Motion For Approval Of The Settlement

After the parties' Settlement was fully executed on December 4, 2017, Tseng's counsel prepared a draft of the proposed Motion for Approval of the Settlement for review by the parties.[6] (Declaration of Dominic Messiha ["Messiha Decl."], ¶¶ 5-7, Exs. A-B [12/4/17 email].)[7]   The draft of the Motion for Approval provided an

---

[6] Tseng's counsel did not send a copy to Nordstrom's counsel of the proposed declaration(s) in support of the Motion for Approval prior to filing the motion. (See Messiha Decl., ¶¶ 5-6, Ex. A.)

[7] Tseng's counsel sent the draft motion to Dominic Messiha, who was one of Nordstrom's counsel of record at the time but who has since left Littler.   (*See* Doc. 250.)

estimated value of the Settlement relating only to the subgroup of employees that Tseng sought to represent:

> As described above, Ms. Tseng's motion regarding the scope of the trial was fully briefed, but not yet heard or decided.  In her motion, ***Ms. Tseng sought to represent at trial the seating claims of both those employees who worked at the counters and cashwraps where she herself worked, and those employees who worked at functionally identical counters and cash wraps***.  Dkt. # 219.  In total, that ***amounted to the employees who worked at eighty-five Nordstrom cosmetics counters and twenty-five additional cashwraps***.  Dkt. # 219-1 at 2.  Assuming a conservative estimate of only "initial violation" penalties, Ms. Tseng estimates the likely maximum PAGA penalties for the employees ***who worked at those counters and cashwraps*** as ***$4,211,788***, based on Nordstrom's estimate of statewide workweeks through December 2016.

(*See* Messiha Decl., ¶ 7, Ex. B [highlighting in original, other emphasis added].)[8]

Tseng's counsel filed the final Motion for Approval of the Settlement on December 8, 2017.  (Doc. 249.)  The final motion changed to estimating the likely value of PAGA penalties attributable to the statewide group instead of just to the subgroup (as provided in the draft motion):

> Assuming a conservative estimate of only "initial violation" penalties, Ms. Tseng estimates the likely maximum PAGA penalties for all of the CCEs who worked at ***all of the 32 Nordstrom's stores*** during the liability period as $4,506,500, based on Nordstrom's estimate of statewide

---

[8] The $4,211,788 maximum valuation based on the subgroup referenced in Tseng's draft motion was within the same range as Nordstrom's own valuation of the maximum PAGA penalties available for that subgroup.  (*See* Messiha Decl., ¶ 8.)

LITTLER MENDELSON, P.C.
501 W. BROADWAY
SUITE 900
SAN DIEGO, CA  92101.3577
619.232.0441

10.

workweeks through the fall of 2016, and updating those workweeks through the present. Tindall Decl., ¶ 7.

(Doc. 249-1, p. 11 [emphasis added].)[9]

### E.     The Court Approved The Settlement Agreement

The Court approved the Settlement Agreement on January 8, 2018.  (Doc. 252 [1/8/18 Order].)     The Court's January 8, 2018 Order specified that the Court "reserve[d] exclusive and continuing jurisdiction over the lawsuit for the purposes of supervising the implementation, enforcement, construction, administration, and interpretation of the Settlement Agreement and this Judgment."  (Doc. 252 [1/8/18 Order].)

### F.     Tseng's Counsel Approved Administration Of The Settlement Based On The Final Counts Of Covered Employees And Pay Periods

Following the Court's approval of the parties' Settlement, Nordstrom provided the Settlement Administrator, Epiq Systems ("Epiq"), with updated data on the Affected Employees as required by the Settlement Agreement.  (Doc. 253, ¶ 3.)  Epiq then analyzed the data, and on March 12, 2018, its Director of Client Services, David Garcia, sent an email notifying counsel for both parties of the final data for the Settlement and asked for permission to administer the Settlement based on those numbers.  Mr. Garcia's email confirmed that the final number of Affected Employees who would receive payments was 8,413 and that the final pay period count was 365,196.  (Dunne Decl., ¶ 3, Ex. B [3/12/18 David Garcia email].)  In full, Mr. Garcia's email to Tseng's and Nordstrom's counsel stated:

> Good Afternoon,
>
> I have attached a spreadsheet listing the eligible pay periods and the payment amounts for each class member.  Please note that for security

---

[9] Nordstrom did not receive Tseng's final Motion for Approval of the Settlement or the supporting declaration until it was filed.  (Messiha Decl., ¶ 6.)  At that time, Nordstrom's counsel did not notice that the motion had been revised to attribute the estimated settlement value to the statewide group rather than the subgroup of employees that Tseng sought to represent.  (See Messiha Decl., ¶¶ 9-10.)

LITTLER MENDELSON, P.C.
501 W. BROADWAY
SUITE 900
SAN DIEGO, CA  92101.3577
619.232.0441

purposes, I have not included the names of each claimant, but instead have included a Tracking Number, which is a unique identifier that Epiq assigns to each claimant.  Also, this spreadsheet includes the calculated payment for Ms. Tseng, but it does not include her service payment.  Ms. Tseng's service payment will be sent separately.

***There are 8,413 class members with a total of 365,196 eligible pay periods.***  Per Section E, paragraph a of the Settlement Agreement, the amount to be paid on a pro rata basis to the class is $121,875, which means that ***each eligible pay period is worth approximately $0.33***.  The ***average payment amount per claimant is $14.48***, the ***lowest payment amount is $0.33*** and ***the highest payment amount is $59.06*** (again, excluding the service payment).  Due to rounding, the total of all payments is $121,830.80, which will leave a remainder of $44.20.

***Please review the attached spreadsheet and confirm that you approve of the methodology that I've outlined above.***  As always, if I may provide any additional information, please do not hesitate to contact me directly.

Thank you,

**David Garcia, MBA, PMP**
Epiq | Director, Client Services

(Dunne Decl., ¶¶ 3-4, Ex. B [3/12/18 David Garcia email] [emphasis added].)

In response to the request for approval, Tseng's counsel, Steven Tindall, responded: "Others should weigh in, but this seems fine to me."  (Dunne Decl., ¶ 4, Ex. B [3/12/18 Tindall email] [emphasis added].)  Likewise, Tseng's other counsel, Jessica Riggin, responded: "I approve.  Thanks."  (Dunne Decl., ¶ 4, Ex. B [3/12/18 Riggin email] [emphasis added].)   Based on the final figures confirmed by Epiq, the total final per pay period amount for the Settlement was $2.80[10] and the total per employee amount was $121.36.[11]

---

[10] This amount is obtained by taking the total overall settlement amount of $995,000 plus administration fees of $26,021 (which Nordstrom paid separately) divided by 365,196 pay periods and is rounded to the nearest cent (*i.e.*, $1,021,021 ÷ 365,196). (*See* Dunne Decl., ¶ 6, Ex. D [Epiq Invoices].)
[11] This amount is obtained by taking the total overall settlement amount of $995,000 plus administration fees of $26,021 and dividing by the final headcount of Affected Employees (8,413) and rounding to the nearest cent (*i.e.*, $1,021,021 ÷ 8,413).

LITTLER MENDELSON, P.C.
501 W. BROADWAY
SUITE 900
SAN DIEGO, CA  92101.3577
619.232.0441

After receiving approval to administer the Settlement:

- Epiq made settlement payments to all 8,413 Affected Employees and the LWDA on or about March 21, 2018.   (*See* Doc. 253, ¶ 4.)

- From late-March through May 2018, Epiq provided Tseng's and Nordstrom's counsel with nine weekly reports regarding the administration of the Settlement, and each of those weekly reports confirmed that Epiq mailed payments to 8,413 employees and further reported the amount of settlement checks that Affected Employees had cashed.  (Dunne Decl."), ¶ 5, Ex. C (3/30/18-5/25/18 Reports).

- In accordance with the Settlement Agreement's mandate that "PAGA Counsel shall file . . . [the Settlement Administrator's] written certification with the Court" verifying that the Settlement was fully and properly administered, Tseng's counsel filed the Declaration of David Garcia Regarding Certification of Completion of the Settlement on October 17, 2018.  (Doc. 253.)  The declaration of Mr. Garcia filed by Tseng's counsel confirmed the final headcount of Affected Employees (8,413), noted that 4,632 employee checks were cashed (totaling $88,935.91) and 3,781 employee checks were not cashed (totaling $32,894.89[12]), and confirmed that "Epiq has completed all of its duties under the terms of the Settlement Agreement."  (Doc. 253, ¶ 6.)

### G.   Nordstrom Learns Of Concerns Regarding The Accuracy Of The Information Provided To This Court In Connection With Tseng's Motion for Approval Of The Settlement

In a separate matter, Nordstrom learned there were concerns that the Court's approval of the Settlement was based, in part, on incorrect information.[13]  Nordstrom

---

[12] Pursuant to the terms of the Settlement, the $32,894.89 in un-cashed checks was transferred to the cy pres designee, Legal Aid at Work on October 1, 2018.  (Doc. 253, ¶ 7.)

[13] As noted above, this issue arose in the context of mediation discussions in a separate matter, and thus, the details are not included in this Motion.

LITTLER MENDELSON, P.C.
501 W. BROADWAY
SUITE 900
SAN DIEGO, CA  92101.3577
619.232.0441

13.

1  investigated the issue and confirmed that the declaration filed in support of Tseng's
2  Motion for Approval of the Settlement estimated that all of the Cosmetic sales
3  employees in the State of California worked a total of 45,065 pay periods from
4  September 9, 2010 to the end of November 2017, which was inaccurate.  (Doc. 249-4,
5  ¶ 7.)   As a result, incorrect inferences could potentially be drawn from Tseng's
6  Motion for Approval of the Settlement regarding the per-pay-period value of the
7  Settlement.  Although this issue does not arise from any submissions to the Court by
8  Nordstrom, Nordstrom is filing the present Motion to ensure the record regarding the
9  Settlement is clear and to request that this Court re-confirm the fairness of the
10 Settlement for the reasons detailed below.

11 Concurrently with this filing, Nordstrom also served a copy of this Motion and
12 all supporting documents on the LWDA.  (Dunne Decl., ¶ 7.)

### III.  THE COURT SHOULD APPROVE A PAGA SETTLEMENT WHERE, AS HERE, THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE AND PROMOTES THE PURPOSES OF PAGA

15 A district court "must 'review and approve' any settlement of PAGA claims."
16 *Salazar v. Sysco Cent. Cal., Inc.*, 2017 U.S. Dist. LEXIS 14971, *5 (E.D. Cal. 2017).
17 However, the analysis used to approve PAGA-only settlements is somewhat different
18 than for class action settlements because "PAGA claims are intended to serve a
19 decidedly different purpose—namely to protect the public rather than for the benefit
20 of private parties."  *See id.* (citing *Arias v. Superior Ct.*, 46 Cal. 4th 969,  986 [2009]);
21 *see also Bruce v. Del Monte Foods, Inc.*, 2018 U.S. Dist. LEXIS 53800, *3 (N.D. Cal.
22 Mar. 29, 2018) (explaining that "[s]ettlement of a PAGA claim does not necessarily
23 follow the procedures governing class action settlements under Federal Rule of Civil
24 Procedure 23").   The LWDA has taken the position that "when a PAGA claim is
25 settled, the relief provided for under the PAGA [must] be genuine and meaningful,
26 consistent with the underlying purpose of the statute to benefit the public and, in the
27 context of a class action, the court [should] evaluate whether the settlement meets the

LITTLER MENDELSON, P.C.
501 W. BROADWAY
SUITE 900
SAN DIEGO, CA 92101.3577
619.232.0441

14.

standards of being 'fundamentally fair, reasonable, and adequate' with reference to the public policies underlying the PAGA." *Salazar*, 2017 U.S. Dist. LEXIS 14971, at *5-8.

As detailed below, the applicable standard for approving a PAGA-only settlement was and is satisfied here because: (1) there was a high risk that Tseng would fail to overcome the manageability-related and merits-based hurdles she faced to successfully litigate her seating claim, in which case Tseng, the LWDA, and Affected Employees would receive nothing; and (2) even if Tseng were to succeed on her PAGA seating claim, there was a significant likelihood that the Court would have exercised its discretion to reduce any PAGA penalties award, especially given the DLSE and IWC's guidance dating back to the mid-1980's, which stated that the nature retail salespeople's work did not reasonably permit the use of seats. These factors support this Court's re-approval of the Settlement regardless of the number of pay periods at issue, especially given that the Settlement Agreement here provided meaningful relief and is not conditioned in any way on a specified pay period number or amount. (*See* Doc. 249-5.)

### A. The Settlement Is Justified In Light Of The Significant Hurdles Tseng Faced To Manageably Litigate Her Seating Claim And Overcome Nordstrom's Defenses On The Merits

Nordstrom contended throughout the *Tseng* litigation, and still contends, that Tseng's seating claim is meritless and would ultimately fail because it cannot be manageably litigated on a representative basis and because the nature of its Cosmetic sales employees' work does not reasonably permit the use of seats.

### 1. The Court's Prior Rulings Created A Significant Risk That The Court Would Find That Tseng Could Not Manageably Pursue Her Seating Claim On A Representative Basis

Absent the Settlement, there is a high risk that Tseng's case would have failed completely at a motion regarding manageability (which was pending at the time the Settlement was reached), at trial and/or on appeal, thus denying Tseng and the

LITTLER MENDELSON, P.C.
501 W. BROADWAY
SUITE 900
SAN DIEGO, CA 92101.3577
619.232.0441

15.

employees she represented any recovery.   To this end, the Settlement Agreement submitted to the Court for approval provided a detailed analysis of the history of the litigation, including the several rulings indicating that Tseng could not manageably prosecute her seating claim on a representative basis.   (*See* Doc. 249-5, Ex. A [Settlement Agreement], ¶¶ 21(a)-(i), ¶ 22.)

As noted above and in the Settlement Agreement, the Court had already denied class certification, finding that ***Nordstrom "supplied considerable evidence that the existing conditions regarding the nature of the work performed by Cosmetics Counter Employees varies both store-to-store and employee-to-employee***."   (Doc. 164 [*Tseng* Order Denying Class Cert. at 9] [emphasis added].)   At the time of Settlement, the Court had also explained that it was "obvious" that Tseng could not represent all Cosmetic sales employees statewide in a PAGA trial.   (Dunne Decl., Ex. A [12/19/16 *Tseng* Hrg.] at 10:8-14 [emphasis added].)   In fact, ***it was an open question at the time of settlement as to whether the Court would permit Tseng to move forward in representing any subset of Cosmetic sales employees***.   (Doc. 228 [Opp. to Mot. to Define Scope].)   Indeed, it is entirely possible that the Court would have found that Tseng could not manageably litigate this case on a representative basis, which would have dealt a fatal blow to her PAGA claim.   *See, e.g.*, *Reyes v. Macy's, Inc.*, 202 Cal. App. 4th 1119, 1123 (2011) ("a plaintiff asserting a PAGA claim may not bring the claim simply on his or her own behalf …."); *Williams v. Superior Court*, 237 Cal. App. 4th 642, 649 (2015) (same); *Ortiz v. Hobby Lobby Stores, Inc.*, 52 F. Supp. 3d 1070, 1089 (E.D. Cal. 2014) (same).

### 2.     There Was Also A High Risk That Tseng's Claims Would Fail On The Merits Given The Strength Of Nordstrom's Defenses

As noted above, to succeed on her seating claim, Tseng would have to overcome numerous hurdles, including the fact that both state agencies responsible for interpreting the Wage Orders have long stated the nature of retail sales work requires standing.  In 1986, the DLSE determined that the nature of retail sales work requires

LITTLER MENDELSON, P.C.
501 W. BROADWAY
SUITE 900
SAN DIEGO, CA  92101.3577
619.232.0441

mobility:

> [Section 14] was originally established to cover situations where the work is usually performed in a sitting position . . . ***It was not intended to cover positions where the duties require employees to be on their feet, such as salespersons in the mercantile industry***.   Historically and traditionally, salespersons have been expected . . . to greet customers and move freely throughout the store to answer questions and assist customers….

(Doc. 147-3, Ex. 1 [DLSE Opinion Letter 12.05.1986] [emphasis added].)   Then, in 1987, the IWC reached the same conclusion: "[t]he nature of the work for salespersons is such that it requires them to be mobile . . . to greet customers and move freely throughout the store."   (Doc. 147-3, Ex. 2 [IWC Opinion Letter 01.13.1987] [emphasis added].)   Nordstrom was informed by these opinions for years which were part of the slim authority available to employers prior to 2016, when the California Supreme Court issued its decision in *Kilby v. CVS Pharmacy, Inc.*, 63 Cal. 4th 1 (2016).  Nordstrom reasonably relied on these agencies' judgment in addition to its own business judgment for direction.   There was a significant likelihood that Tseng, as the 'deputized' representative of the State of California, would not be able to persuasively contradict the State's own guidance that the nature of retail sales employees work did not reasonably permit the use of seats.  (Doc. 147-3, Ex. 1 [DLSE Opinion Letter 12.05.1986]; Doc. 147-3, Ex. 2 [IWC Opinion Letter 01.13.1987].)

Based on the DLSE and IWC's Opinion Letters, there is also a significant risk that Tseng would have been equitably estopped from further pursuing her seating claim because as the 'deputized' agent for the LWDA she cannot rely on a contrary position to the guidance in effect, at least through the *Kilby* decision.  *See  Gomez v. J. Jacobo Farm Labor Contr., Inc.*, 188 F. Supp. 3d 986, 997-998 (E.D. Cal. 2016) (stating that an employer's reliance on opinion letters of the LWDA may equitably estop the state, via its 'deputized' PAGA representative, from later suing a company, such as Nordstrom, that reasonably relied on its prior guidance); *Yamaha Corp. of Am.*, 19 Cal. 4th at 7–8 (noting that an agency's interpretation "is entitled to

LITTLER MENDELSON, P.C.
501 W. BROADWAY
SUITE 900
SAN DIEGO, CA  92101.3577
619.232.0441

17.

consideration and respect by the courts"); *Hamilton v. State Farm Fire & Cas.Co.,* 270 F.3d 778, 782 (9th Cir. 2001) (explaining that equitable principles "preclude[] a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position.").

Moreover, there is a wealth of evidence that Nordstrom's Cosmetic sales employees in particular have job duties that are inconsistent with the use of seats. Nordstrom expects its Cosmetic sales employees to be standing and mobile on the sales floor to provide excellent customer service, deter theft, and avoid safety risks for employees and customers alike.  (*See* Doc. 228 [Opp. to Mot. to Define Scope].) These tasks include, for example, greeting customers, walking them through the store to suggest merchandise, walking through the department to tidy up, deterring shoplifters by remaining mobile and interacting with customers in the store, etc.  (*See* Doc. 228 [Opp. to Mot. to Define Scope].)  Thus, under *Kilby's* guidance as well as that of the DLSE and IWC, the nature of Nordstrom's Cosmetics sales employees' work does not reasonably permit sitting, which Nordstrom strongly believes would ultimately defeat Tseng's claims.  (*See id.*)

Given these risks, the parties' Settlement Agreement is fair, adequate and reasonable.  Indeed, multiple courts have approved PAGA-only settlements where, as here, the parties provided notice to the LWDA and "arrived at a settlement agreement *after mediation and having considered the sharply disputed factual and legal issues* involved in the lawsuit, *the risks and burdens attending further litigation, and the benefits to be received* through compromise and settlement of plaintiffs' claims." Salazar, 2017 U.S. Dist. LEXIS 14971, at *5-8 (approving PAGA-only settlement after recognizing risks of continued litigation) (emphasis added); *Bruce*, 2018 U.S. Dist. LEXIS 53800 at *3-4 (approving PAGA-only settlement based, in part, on the fact that the defendant "ha[d] agreed to pay a significant monetary penalty for PAGA claims that were *subject to considerable uncertainty* on both sides of this case" and the parties "settled after presenting an overview of the evidence and their legal

LITTLER MENDELSON, P.C.
501 W. BROADWAY
SUITE 900
SAN DIEGO, CA 92101.3577
619.232.0441

18.

arguments at a mediation before a qualified mediator" [similar to Judge Gandhi here])[14]; *see also Juarez v. Villafan*, 2017 U.S. Dist. LEXIS 137205, *5 (E.D. Cal. 2017) (approving the parties' settlement and release of PAGA claims, FLSA claims and state class action claims ***even though the settlement allocated $0 to the PAGA*** and FLSA claims because the overall value of the settlement was fair); *Nordstrom Com. Cases,* 186 Cal. App. 4th 576, 579 (2010) (rejecting argument "that the settlement was not fair, adequate, and reasonable" even though it allocated $0 to the plaintiff's PAGA claim, which was nevertheless included as part of the overall settlement).

Significantly, none of the decisions cited above approving PAGA-only settlements (or the PAGA portion of a class action settlement) made any mention of pay period valuations as being considered in the courts' analysis or evaluation of the fairness of these settlements.  *See generally Salazar*, 2017 U.S. Dist. LEXIS 14971; *Bruce*, 2018 U.S. Dist. LEXIS 53800, *3; *Juarez*, 2017 U.S. Dist. LEXIS 137205.

Thus, given the significant risk that Tseng's seating claim would fail and provide no recovery to her, the LWDA, or Affected Employees, the parties Settlement – totaling nearly a million dollars (plus costs of administration) – is certainly fair, adequate, and reasonable in light of the facts and circumstances of this case.

### B. Even If Tseng Had Succeeded In Bringing Her PAGA Seating Claim, There Is A High Likelihood The Court Would Have Exercised Its Discretion To Significantly Reduce Any PAGA Penalties Award

For the reasons detailed above, Nordstrom contends that the odds are remote that Tseng could have overcome all of the obstacles outlined above to establish

---

[14] The *Bruce* court also noted that "parties reasonably vetted the claims and defenses through written discovery, motion practice, third-party subpoena practice, and informal exchanges of information" and that the "settlement amount of $904,872 exceeds the amount plaintiffs estimated would be recovered even with a successful litigation outcome."  Bruce, 2018 U.S. Dist. LEXIS 53800, *3  As explained below, the amount awarded here was also entirely reasonable in proportion to the maximum amount Tseng could reasonably expect to recover in this case regardless of the higher number of pay periods ultimately confirmed by the Settlement Administrator.

LITTLER MENDELSON, P.C.
501 W. BROADWAY
SUITE 900
SAN DIEGO, CA  92101.3577
619.232.0441

19.

liability.  However, even had Tseng done so, ***the Court would have had discretion to reduce any PAGA award she obtained***.  *See* Cal. Lab. Code § 2699(e)(2) (stating that "a court may award a lesser amount than the maximum civil penalty . . . if, based on the facts and circumstances of the particular case, to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory").   Here, ***there was a particularly high risk that the Court would have exercised its discretion, especially given the DLSE's and IWC's prior opinions, which would weigh heavily in favor of substantially reducing any PAGA award***.  *See id.*; Doc. 147-3, Ex. 1 [DLSE Opinion Letter 12.05.1986]; Doc. 147-3, Ex. 2 [IWC Opinion Letter 01.13.1987]; *see also e.g., Fleming v. Covidien, Inc.,* 2011 U.S. Dist. LEXIS 154590, *9 (C.D. Cal. 2011) (reducing the original PAGA penalty of $2.8 million by over 82% to $500,000]); *Aguirre v. Genesis Logistics*, 2013 U.S. Dist. LEXIS 189820, *5-7 (C.D. 2013) (reducing the original PAGA penalty of $1.8 million by over 72% to $500,000).

Given all the risk factors for Tseng outlined above, ***for Nordstrom to agree to pay <u>any amount</u>, much less nearly a million dollars (plus the cost of settlement administration) was more than fair to the LWDA, Affected Employees and Tseng***. This is true notwithstanding the differences in valuations based upon an estimated 45,065 pay periods provided in the declaration supporting Tseng's Motion for Approval of the Settlement and the 365,196 pay periods actually at issue.   As evidenced by the lack of any pay period requirements or provisions in the Settlement Agreement, the settlement was fair and adequate because it provided a way for all parties to avoid further expense and burden while still allowing a significant recovery to the LWDA and Affected Employees when they very likely would otherwise recover nothing.  (Doc. 249-5, Ex. A [Settlement Agreement], ¶ 24 [explaining that "PAGA Counsel is of the opinion that the Settlement… is fair, reasonable, and adequate and is in the best interest of the Affected Employees in light of all known facts and circumstances, including the risk of significant delay and uncertainty associated with litigation, the various defenses asserted by Defendant, and the numerous potential

LITTLER MENDELSON, P.C.
501 W. BROADWAY
SUITE 900
SAN DIEGO, CA  92101.3577
619.232.0441

20.

1    appellate issues"], ¶ 25 [explaining that "although [Nordstrom] vigorously denies that

2    the Action has any merit, [it] has determined that" settlement is desirable " to avoid

3    further expense, inconvenience and distraction of further legal proceedings…."].)

4    **IV.     CONCLUSION**

5         For the reasons detailed above, and to ensure the record regarding the

6    settlement of this action is clear, Nordstrom respectfully requests that the Court issue

7    an order taking notice of the final headcount and pay period figures and reconfirming

8    the Court's approval of the Settlement Agreement overseen by Judge Gandhi.

9    Dated:  December 21, 2018

                                              /s/ Joshua D. Levine
10                                            JULIE A. DUNNE
                                              JOSHUA D. LEVINE
11                                            LITTLER MENDELSON, P.C.
                                              Attorneys for Defendant
12                                            NORDSTROM, INC.

13

14   FIRMWIDE:160929948.21 058713.1034

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON, P.C.
501 W. BROADWAY
SUITE 900
SAN DIEGO, CA  92101.3577
619.232.0441