Steven M. Tindall, Bar No. 187862
Amanda M. Karl, Bar No. 301088
smt@classlawgroup.com
GIBBS LAW GROUP LLP
505 14TH STREET, SUITE 1110
Oakland, CA 94612
Telephone:  510-350-9700
Facsimile:  510-350-9701

Jessica Riggin, Bar No. 281712
jriggin@rukinhyland.com
RUKIN HYLAND & RIGGIN LLP
1939 Harrison Street, Suite 290
Oakland, CA 94612
Telephone:  415-421-1800
Facsimile:  415-421-1700

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSIKA TSENG, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NORDSTROM, INC., and Does 1 through 50, inclusive,<br><br>Defendants. | Case No. 11-CV-08471 CAS (MRWx)<br><br>**PLAINTIFF JESSIKA TSENG'S RESPONSE TO DEFENDANT NORDSTROM, INC.'S MOTION TO CLARIFY RECORD AND RECONFIRM APPROVAL OF PAGA SETTLEMENT**<br><br>Date:        January 28, 2019<br>Time:        10:00 a.m.<br>Judge:       Hon Christina A. Snyder<br>Courtroom: 8D |

**TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................... 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ............................................. 3

  A.    Brief Procedural History—from Initial Complaint until the Second Settlement

        Conference .............................................................................................. 3

  B.    Settlement Conference with Magistrate Judge Gandhi ......................................... 5

  C.    Settlement Approval Briefing and Settlement Approval ...................................... 5

  D.    Administration of the Settlement ................................................................... 9

  E.    Plaintiff's Counsel Learns of the Discrepancy Between the Pay Periods used in

        the Approval Briefing and those used in Calculating Settlement Payments ....... 11

III.    GIVEN THE SUBSTANTIAL RISKS OF THE CASE, SETTLEMENT

        APPROVAL IS STILL APPROPRIATE ................................................................ 12

  A.    The Risks Plaintiff Faced in Recovering PAGA Penalties were Substantial ...... 12

  B.    The Settlement Continues to be Fair and Reasonable Under a Revised Calculation

        of Possible Available Penalties ................................................................... 15

IV.     CONCLUSION ........................................................................................... 19

REPONSE TO MOTION TO CLARIFY RECORD AND RECONFIRM APPROVAL
OF PAGA SETTLEMENT
CASE NO. 11-CV-08471 CAS (MRWx)

# TABLE OF AUTHORITIES

**Cases**

*Aguirre v. Genesis Logistics*,
2013 WL 10936035 (C.D. Cal. Dec. 30, 2013) ................................................15

*Echavez v. Abercrombie & Fitch Co., Inc.*,
2017 WL 3669607 (C.D. Cal. March 23, 2017) ..............................................18

*Fleming v. Covidien, Inc.*,
2011 WL 7563047 (C.D. Cal. Aug. 12, 2011) ................................................15

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454. (9th Cir. 2000) ........................................................................18

*Kilby v. CVS Pharmacy, Inc.*,
63 Cal. 4th 1 (2016) ..........................................................................4, 6, 7, 8

*Ma v. Covidien Holding, Inc.*,
2014 WL 360196 (C.D. Cal. Jan. 31, 2014) ....................................................18

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982) ..........................................................................13

*Rodriguez v. West Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ..........................................................................13

*Stovall-Gusman v. W.W. Granger, Inc.*,
2015 WL 3776765 (N.D. Cal. June 17, 2015) ................................................17

*Thurman v. Bayshore Transit Mgmt., Inc.*,
203 Cal. App. 4th 1112 (2012) ......................................................................15

*Villegas v. J.P. Morgan Chase & Co.*,
2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ................................................18

**Statutes**

Cal. Lab. Code § 2699(e)(2) ..........................................................................9, 155

ii

## I.   **INTRODUCTION**

Plaintiff Jessika Tseng submits this brief in response to Defendant Nordstrom Inc.'s motion to clarify the record and reconfirm the Court's approval of the PAGA Settlement reached in this case.

This case was filed more than seven years ago and has been vigorously litigated since its inception—from Nordstrom's motion to dismiss and motion for summary judgment, through Plaintiff's class certification motion, a stay on the case pending the California Supreme Court's decision in *Kilby v. CVS Pharmacy, Inc.,* and Nordstrom's motion for judgment on the pleadings, up until Plaintiff's sharply contested Motion for an Order Defining the Scope of Plaintiff's PAGA claim.  Plaintiff's motion regarding the scope of her claim was fully briefed and pending at the time the parties engaged in a second settlement conference with Magistrate Judge Jay Gandhi, which ultimately led to the PAGA settlement at issue in the present motion.

At the hearing on Nordstrom's motion for judgment on the pleadings, the Court made clear that, in light of the variations in the cosmetics counters and cashwraps at Nordstrom stores, Plaintiff could not represent *all* of the cosmetics counter employees (or "CCEs") throughout California.  As such, in her motion to define the scope of her claim, Plaintiff put forth two alternative subgroups of aggrieved employees on whose behalf she sought relief.  The larger proposed subgroup consisted of CCEs who worked at counters and cashwraps that Plaintiff's expert testified were "functionally identical" to the counters and cashwraps where Plaintiff worked.  This subgroup represented approximately 27% of the entire group of California CCEs.  In the alternative, Plaintiff proposed a much smaller subgroup consisting of CCEs who worked at the same counters and cashwraps where Plaintiff herself worked, a group representing less than 2% of the total group of CCEs.  If Plaintiff succeeded in her motion, therefore, she would have

REPONSE TO MOTION TO CLARIFY RECORD AND RECONFIRM APPROVAL
OF PAGA SETTLEMENT
CASE NO. 11-CV-08471 CAS (MRWx)

tried the case on behalf of one of these subgroups rather than on behalf of all CCEs in California.

In her motion for approval of the PAGA settlement, Plaintiff provided the Court with estimates of the likely maximum PAGA penalties for CCEs who worked in all of Nordstrom's 32 stores as well as the two proposed subgroups—each based on the workweek information that Plaintiff's Counsel had available to it at the time of the motion.  Based on that information, Plaintiff's Counsel estimated that a total of 90,130 weeks (or 45,065 pay periods) were worked by CCEs during the liability period.  Plaintiff argued that, given that she would likely only be able to represent either a small (27%) or *very* small (2%) subgroup of the total set of CCEs, the settlement amount of $995,000 represented a substantial percentage of the likely maximum recovery.  As such, Plaintiff believed the settlement fully warranted Court approval.  The Court granted settlement approval.  In March and April 2018, the payments under the Settlement were made to the affected employees and to the Labor & Workforce Development Agency ("LWDA").

It was recently brought to Plaintiff's Counsel's attention—both by Nordstrom and by Capstone Law (counsel for proposed intervenor Trang Nguyen)—that the number of pay periods worked by the statewide group of CCEs was substantially greater than that reflected by the information that Plaintiff had at the time of settlement approval.  Plaintiff now understands that the pay periods worked by CCEs statewide amounted to 365,196 rather than 45,065.  As a result, the total PAGA penalty calculations reflected in Plaintiff's settlement approval motion for the statewide CCEs and the two subgroups were inaccurate and should be recalculated so the Court can consider revised penalty calculations (which are reflected below) as one factor in assessing the overall fairness and reasonableness of the Settlement.

REPONSE TO MOTION TO CLARIFY RECORD AND RECONFIRM APPROVAL
OF PAGA SETTLEMENT
CASE NO. 11-CV-08471 CAS (MRWx)

For the reasons stated below, although the number of statewide pay periods are substantially greater than Plaintiff believed previously, given the circumstances of this case—particularly (1) the modest size of the subgroups for whom the trial would have been brought, (2) the risk of Plaintiff losing on the merits at trial, and (3) the risk that the Court would, in its discretion, award substantially less than the maximum PAGA penalty—Plaintiff believes that the $995,000 settlement continues to be a fair and reasonable resolution of this hard-fought litigation.  Plaintiff, therefore, does not oppose Nordstrom's motion to clarify the record and agrees that the PAGA settlement reached in this case should continue to be approved.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  Brief Procedural History—from Initial Complaint until the Second Settlement Conference

Plaintiff Jessika Tseng worked as a CCE at three California Nordstrom locations. Throughout Plaintiff's tenure (and throughout the liability period of this case), Nordstrom maintained a company policy of not providing seats for its CCEs to use while working on the sales floor.  Plaintiff filed her original complaint in the Los Angeles County Superior Court over seven years ago, on September 9, 2011, alleging a single cause of action under the Private Attorneys' General Act of 2004 ("PAGA").  In October 2011, Nordstrom removed the case to this Court.  *See* Dkt. #1.

After litigating the case for almost 18 months, Nordstrom moved for summary judgment, which this Court denied by Order of March 25, 2013, finding that disputed issues of material fact existed regarding whether the CCEs' work reasonably permitted the use of a seat.  Dkt. # 119 at 10.  After extensive discovery, Plaintiff moved for certification of a class of all Nordstrom CCEs who worked in California at any time from September 9, 2010 until final judgment.  Dkt. # 129-1 at 10.  The Court denied Plaintiff's motion, finding that differences in the layout of Nordstrom's thirty-two California stores

3

"provide a sufficient basis to conclude that common issues do not predominate." Dkt. # 164 at p. 17.

In its Order, the Court noted that its class certification denial was without prejudice and that the Ninth Circuit had recently certified questions to the California Supreme Court concerning the interpretation of the California Wage Order provision regarding seating that formed the basis of Plaintiff's PAGA claim. Dkt. # 164 at p. 18. After the Court denied class certification, the parties participated in a settlement conference with Magistrate Judge Jay Gandhi. The parties made progress toward settlement but were unable to fully resolve the matter. On April 2, 2014, the Court stayed the action pending the California Supreme Court's decision on the certified questions. Dkt. # 183. After the Supreme Court issued its decision in *Kilby v. CVS Pharmacy, Inc.,* 63 Cal. 4th 1 (2016), the Court lifted the stay. Dkt. # 183.

Following the lifting of the stay, Nordstrom moved for judgment on the pleadings, arguing that Plaintiff could not litigate her PAGA claim on a representative basis due in part to the differences in both the size of Nordstrom's cosmetics departments and the layouts of the cosmetics counters, which the Court had noted in its Order denying class certification. By Order of December 19, 2016, the Court ruled that Plaintiff could pursue her claim on a representative basis but, because of trial manageability concerns, ordered Plaintiff to "bring a motion to define the scope of the employees whom she represents." Dkt. # 204 at 11. At the hearing, the Court noted that it "put the burden on the plaintiff to figure out and set forth what people the plaintiff seeks to represent because . . . she can't [represent] every single Nordstrom employee in every single cosmetics department across the state. That's obvious. She has a higher burden." Dkt. # 255-2, at p. 10 of 28.

As such, on March 13, 2017, Plaintiff filed a Motion for an Order Defining the Scope of Plaintiff's PAGA Claim. Dkt. # 219. In her motion, Plaintiff sought to represent at trial the seating claims of (a) those employees who worked at the counters and cashwraps where she herself worked, and (b) those employees who worked at counters

4

REPONSE TO MOTION TO CLARIFY RECORD AND RECONFIRM APPROVAL
OF PAGA SETTLEMENT
CASE NO. 11-CV-08471 CAS (MRWx)

that were functionally identical to the ones where she worked.  Based on the total number of cosmetics counters at Nordstrom statewide, Plaintiff's Counsel estimated that the employees in the former group represented only a small fraction (less than 2%) of the total group of CCEs, and the latter group, who worked at the 85 counters and 24 cashwraps that were substantially identical to Plaintiff's, represented approximately 27% of the total.  *See* Dkt. # 249-4 at 3-4.  Nordstrom opposed Plaintiff's motion defining the scope of her claim, arguing that because Nordstrom's cosmetics counters and store layouts varied significantly from store to store and because the workflow and job tasks of each CCE varied greatly, Plaintiff could not represent the claims of any other CCEs.  Dkt. # 187-1 at 4-5.

After full briefing on Plaintiff's motion but before the hearing, the parties agreed to try again to settle the matter.

## B.   Settlement Conference with Magistrate Judge Gandhi

On June 28, 2017, Judge Gandhi conducted a second settlement conference.  In preparation for that conference, Nordstrom provided Plaintiff with data regarding the number of weeks CCEs worked throughout California during the relevant period up until the fall of 2016.  Dkt. # 249-4 at 3.  Although the parties' discussion at the conference was productive, they were unable to resolve the matter that day.  Nonetheless, they continued settlement negotiations thereafter, with Judge Gandhi's assistance.  The parties ultimately reached agreement on the key settlement terms on July 21, 2017 and entered into a detailed settlement agreement on November 30, 2017.

## C.   Settlement Approval Briefing and Settlement Approval

On December 8, 2017, Plaintiff moved for approval of the PAGA settlement reached in this case.  Dkt. # 249-1.  In her moving papers, Plaintiff described the lengthy procedural history of the case, the settlement terms, the risks Plaintiff faced in the case, and Plaintiff's estimated calculations of the potential PAGA penalties that could be awarded in the case.  The total settlement amount was $995,000 plus the costs of

5

settlement administration, which were to be paid separately by Nordstrom—that is, in addition to the $995,000 settlement amount—meaning that the gross settlement was worth over $1 million.[1]  The terms of the settlement designated $487,500 for PAGA penalties, $497,500 for attorneys' fees and costs, and $10,000 for a service payment to Ms. Tseng.  As provided in PAGA, 75% of the amount designated for PAGA penalties, or $365,625, was to be paid to the LWDA and $121,875 (25% of the PAGA amount) was to be paid to the Affected Employees.[2]

In her briefing in support of settlement approval, Plaintiff noted that the Settlement was the product of serious, arm's-length negotiations conducted after six years of litigation and two separate, lengthy settlement conferences with a skilled Magistrate Judge.  Dkt. # 249-1 at 9.  Plaintiff also asserted that the settlement was fair and reasonable given the strength of the Plaintiff's case and the risks, expense, and complexity of further litigation.  *Id.* at 10.  Moreover, Plaintiff noted that the lack of clear authority applying the penalty provisions of PAGA made it difficult to calculate possible outcomes.  *Id.* at 10-11.

In the settlement approval briefing, Plaintiff also estimated the range of PAGA penalties that could be awarded in her case.  At the time of the briefing, Plaintiff had available to her the number of weeks worked by CCEs throughout California during the liability period through the fall of 2016.  Declaration of Steven M. Tindall In Support of Plaintiff's Response to Nordstrom's Motion to Reconfirm Approval of PAGA Settlement ("Tindall Response Decl."), ¶ 3.  Based on that figure, Plaintiff calculated the

---

[1] Nordstrom has indicated that it paid a total of $26,021 in settlement administration fees.  As such, the settlement was worth a total of $1,021,021.  *See* Dkt. # 255-1 at 12, fn. 10.

[2] The Settlement defined the Affected Employees entitled to settlement payments as "all non-exempt individuals who worked as a salesperson in a Nordstrom Cosmetic Department in the State of California at any time from September 9, 2010 through the date on which the Court approves this Settlement."  Dkt. # 249-5 (Settlement Agreement), ¶ A(2).

REPONSE TO MOTION TO CLARIFY RECORD AND RECONFIRM APPROVAL
OF PAGA SETTLEMENT
CASE NO. 11-CV-08471 CAS (MRWx)

number of weeks worked by CCEs on a monthly basis and used that figure to extrapolate the number of weeks worked by CCEs throughout the state during the liability period up until the end of November 2017.  Dkt. # 249-4 at 3 (paragraph 7).

Using the data available to Plaintiff, Plaintiff's Counsel estimated the number of weeks worked by CCEs during the liability period to be 90,130.  Dkt. # 294-4 (paragraph 7).  Because pay periods encompassed two workweeks, Plaintiff's Counsel estimated the number of pay periods as 45,065.[3]  Plaintiff noted further that if the Court were to award a $100 PAGA penalty for every such pay period—that is, $100 for each pay period worked by all CCEs throughout California—the estimated total liability would be 45,065 pay periods x $100 per pay period, or $4,506,500.  Dkt.  249-1 at 11; # 249-4 at 3.

In its brief in support of the motion to clarify the record and reconfirm settlement approval, Nordstrom notes that prior to the submission of the settlement approval motion to the Court, Plaintiff's Counsel provided a draft of the proposed motion to it.  Dkt. 255-1 at 9-10.  That is correct:  four days prior to the submission of the settlement approval briefing, as a professional courtesy to Nordstrom, Plaintiff provided an early draft of her motion to Nordstrom's counsel.  Tindall Response Decl., ¶ 4.  The draft version of the brief included a preliminary version of Plaintiff's calculation of maximum PAGA penalties, which were listed as $4,211,788.  *Id.*  The draft brief, however, stated incorrectly that this figure represented the damages of the subgroup of employees who worked at counters and cashwraps that are "functionally identical" to Plaintiff's.  *Id.* This figure instead represented a preliminary calculation of the $100 PAGA penalty multiplied by the number of estimated pay periods for all California CCEs during the liability period.  *Id.*[4]

---

[3] 90,130 workweeks ÷ 2 = 45,065 pay periods.
[4] A redlined version of the draft brief detailing how the calculation was performed makes clear that the calculation was based on the statewide workweek information that

7

In revising the settlement approval brief prior to filing, Plaintiff's Counsel noticed that the calculation did not relate to the subgroup of CCEs but to all CCEs statewide and that the calculation assumed that the workweek information was current through the end of 2016, when it was actually current through the fall of 2016.  *Id.* at ¶ 5. Plaintiff's Counsel therefore revised this section of the brief to (1) correctly identify the penalty figure as representing Plaintiff's Counsel's calculation of the PAGA penalties for CCEs statewide, and (2) revise and refine the estimation of the pay periods by using the workweek information Nordstrom had provided through the fall of 2016 and bringing that figure up to date as of November 2017.  *Id.*  The revised penalty estimate appears in the brief filed with the Court and is described in the declaration submitted in support thereof.  *Id., see* Dkt. #294-1 at 11 and #294-4 at ¶ 7.

As noted above, the larger subgroup that Plaintiff sought to represent at trial in her motion regarding the scope of trial, however, constituted only a small subset (27%) of the total CCEs statewide.  Dkt. # 249-1 at 11-12.  The alternative group that Plaintiff sought to represent was significantly smaller—including only those employees who worked at the counters where Plaintiff herself worked.  This alternative subgroup represented less than 2% of the total CCEs statewide.  Dkt. # 249-1 at 12, # 249-4 at ¶ 8.

Using the pay period data available to Plaintiff at the time of briefing, Plaintiff calculated the likely maximum PAGA penalties for the larger of these two subgroups of CCEs as $1,216,755 and for the smaller of the subgroups as $90,130.  Dkt. # 294-4 at ¶ 8.  Based on these figures, Plaintiff noted that the $995,000 settlement represented a sizeable percentage of the available penalties:  (1) 22% of the PAGA penalties available if Plaintiff demonstrated a violation on behalf of all CCEs statewide, (2) nearly 82% of the PAGA penalties for the largest scope of trial that Plaintiff sought in her motion; and

---

Nordstrom provided to Plaintiff's Counsel and therefore represents a calculation of statewide PAGA penalties.  *Id.*

REPONSE TO MOTION TO CLARIFY RECORD AND RECONFIRM APPROVAL OF PAGA SETTLEMENT
CASE NO. 11-CV-08471 CAS (MRWx)

(3) significantly more than 100% of the PAGA penalties available for the smaller of the two subgroups.  *See* Dkt. # 249-1 at 12.

These estimated PAGA penalty calculations were one factor in Plaintiff's presentation regarding the fairness of the proposed settlement.  Plaintiff also noted the risks that Plaintiff faced if she did not reach a settlement and instead continued litigating the case through trial—including the risks that the Court would restrict the group Plaintiff could represent to only CCEs who worked at the counters at which Plaintiff worked, that the Court would conclude on the merits that the nature of the CCEs' work did not reasonably permit the use of seats, and that even if the Court awarded penalties, it would use its discretion to "award a lesser amount than the maximum civil penalty," which PAGA explicitly permits.  Cal. Lab. Code § 2699(e)(2).  Dkt. # 249-1 at 10, 12.

Plaintiff's Counsel provided the Settlement to the LWDA on December 8, 2017 and later provided the Settlement approval order to the LWDA on January 12, 2018. Tindall Response Decl., ¶ 6.  Although the LWDA sent an email acknowledging receipt of the Settlement, at no time has the LWDA communicated with Plaintiff's Counsel about the substance of either the settlement or the settlement approval order.  *Id.*  At no time has the LWDA objected to the settlement or the settlement approval order or sought additional information regarding either.  *Id.*

On January 8, 2018, the Court approved the Settlement.  Dkt. # 252.  In its Order, the Court determined that the Settlement was "fair, adequate, [and] reasonable."  *Id.* at 1. In making its determination, the Court considered "the nature of the claims, the amounts to be paid in settlement, the allocation of settlement proceeds among the Affected Employees and the fact that a settlement represents a compromise of the Parties' respective positions rather than the result of a finding of liability at trial."  *Id.*

## D.   Administration of the Settlement

The Settlement Administrator, Epiq Systems, used data provided by Nordstrom to calculate the settlement payments for each Affected Employee.  Under the Settlement's

9

terms, each employee's settlement share would be based on the number of pay periods that the employee worked. Dkt. # 249-5 at p. 8 of 17. Approximately three months after the Court's Order approving the Settlement, Epiq sent an email to counsel for both Nordstrom and Plaintiff, attaching a spreadsheet identifying the affected employees by unique tracking numbers, the number of pay periods each employee worked, and the payout for each employee. Dkt. # 255-2 at ¶ 3. The information contained in the spreadsheet and email indicated that there were 8,413 affected employees who worked a total of 365,196 pay periods. *Id.*

Epiq's email indicated further that the average payment per employee was $14.48, with a range of payments between $0.33 and $59.06. *Id.* Epiq asked for approval from counsel, which counsel provided. *Id.* at ¶ 4. Prior to giving approval, Plaintiff's Counsel reviewed the spreadsheet, the estimated payouts for each affected employee, and the total amount to be paid out. Tindall Response Decl., ¶ 7. Neither Plaintiff's Counsel, however, compared the total number of pay periods identified by Epiq to the number of pay periods used to calculate the estimated total damages in the settlement approval briefing. *Id.* As a result, neither Plaintiff's Counsel realized at the time the substantial discrepancy between these two figures. *Id.*

Epiq made the settlement payments to all of the Affected Employees and the LWDA on or around March 21, 2018. Dkt. # 253 at paragraph 4. Of the 8,413 checks mailed out, 4,632 were cashed, totaling $88,935 of the total $121,875 that was issued (or approximately 73% of the total). Under the terms of the Settlement, the proceeds remaining from the uncashed Affected Employee checks were distributed on a *cy pres* basis to the legal non-profit Legal Aid at Work. Dkt. # 253, ¶ 7. On April 2, 2017, Epiq also sent a check for the portion of the Settlement fund earmarked for the LWDA ($365,625) to the LWDA. *See* Tindall Response Decl., ¶ 11. As such, all of the Settlement funds (including payments to Plaintiff's Counsel and the service award payment to Plaintiff) have been distributed. *See id.*

10

REPONSE TO MOTION TO CLARIFY RECORD AND RECONFIRM APPROVAL OF PAGA SETTLEMENT
CASE NO. 11-CV-08471 CAS (MRWx)

### E.     Plaintiff's Counsel Learns of the Discrepancy Between the Pay Periods used in the Approval Briefing and those used in Calculating Settlement Payments

On or around November 27, 2018, Plaintiff's Counsel was contacted by lawyers from Capstone Law, APC—counsel for the plaintiff (Trang Nguyen) in a separate matter against Nordstrom pending in California state court.  Tindall Response Decl., ¶ 8.  The Capstone attorneys brought to Plaintiff's Counsel's attention the discrepancy between the pay periods that were ultimately used as the basis for calculating the Settlement payments (365,196) and the pay period calculation that Plaintiff's Counsel used in the settlement approval papers (45,065).  *Id.*  Plaintiff's Counsel reviewed the information they had at the time the Settlement was reached and at the time they moved for Settlement Approval and confirmed that the information that they used to provide the penalty estimate to the Court was the latest and (they believed), the most accurate information that they had about the number of pay periods worked by the group of Affected Employees during the liability period.  *Id.*

Plaintiff's Counsel also reviewed the communication received from the Settlement Administrator at the time of Settlement distribution and concluded that they had simply not recognized at the time that the total number of pay periods included in the Settlement Administrator's spreadsheet and email was significantly greater than the total they had used in their approval briefing.  *Id.* at ¶ 7.

Counsel for Nordstrom informed Plaintiff's Counsel that it would be submitting the corrected pay period information to the Court and asking the Court to reaffirm the Settlement.  *Id.* at ¶ 9.  Plaintiff's Counsel informed Nordstrom's counsel that it would review Nordstrom's submission and submit a response (which it is doing with the present brief).  *Id.*  Counsel for the plaintiff in the related state-court litigation against Nordstrom contacted Plaintiff's Counsel and informed them that the plaintiff in that case

11

(Ms. Nguyen) would be seeking to intervene in this matter. *Id.* at ¶ 10. Plaintiff's Counsel informed counsel for the proposed intervenor and Nordstrom that it would not oppose Ms. Nguyen's request for intervention. *Id.*

## III. GIVEN THE SUBSTANTIAL RISKS OF THE CASE, SETTLEMENT APPROVAL IS STILL APPROPRIATE

As the Court is aware from the more than seven years that this case has been pending, the case has a lengthy, contentious procedural history, marked by vigorous litigation by both Plaintiff and Nordstrom. At the time of the second settlement conference with Judge Gandhi—which took place just prior to a scheduled hearing to decide the scope of the trial—Plaintiff continued to face significant risks and barriers to recovering PAGA penalties on behalf of her fellow aggrieved Nordstrom employees. As described below, in light of the range of possible outcomes to the litigation, the $995,000 Settlement Plaintiff achieved remains a fair and reasonable result that warrants the Court's continued approval—even in light of the increase in the number of pay periods at issue statewide.

### A. The Risks Plaintiff Faced in Recovering PAGA Penalties were Substantial

In deciding whether a class action settlement is fair, adequate, and reasonable, courts in the Ninth Circuit consider the following factors:

> [1] the strength of the plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement.

*Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 963 (9th Cir. 2009).  As part of this evaluation, a court takes into account the recovery reached through the settlement and the range of outcomes that could have occurred if the case had been litigated through trial (and appeals).  Courts assess the likelihood of success, not by a particular formula, but instead by "delicate balancing, gross approximations and rough justice."  *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 625 (9th Cir. 1982) (internal quotation marks and citation omitted).

The risks that Plaintiff faced in successfully recovering PAGA penalties in this matter included the following:  (1) the risk that the Court would restrict the scope of the trial significantly; (2) the risk that the Court would rule for Nordstrom on the merits; and (3) the risk that even if Plaintiff demonstrated that PAGA penalties were warranted the Court would, in its discretion, reduce them.

First, given the Court's statement at a prior hearing that Plaintiff could not represent every Nordstrom employee at every cosmetics department across the state, the group of affected employees that Plaintiff would represent at trial would necessarily be less than the total number of CCEs in California.  Indeed, the Court noted frankly that, if Plaintiff's motion on the scope of the trial was not successful, "we will either have . . . no PAGA representation or very limited PAGA representation.  I don't see what's wrong with that."  Dkt. # 255-2 at page 10 of 28.

In her motion regarding the scope of trial, Plaintiff provided two alternative subgroups, as described above.  The larger group, which included the CCEs that worked at counters that were "substantially identical" to Plaintiff's according to Plaintiff's expert, represented approximately 27% of the total group of CCEs.  Dkt. # 294-4 at ¶ 8. The smaller group included only the CCEs that worked at Plaintiff's specific counters and represented less than 2% of the total.  *See id.*[5]

---

[5] Although Plaintiff's motion regarding the scope of trial did not propose it as an alternative, in the Settlement Approval filing, Plaintiff noted that a third possible

13

As such, even if the Court concluded that Plaintiff could represent employees other than herself, the total number of those employees represented at trial would have been 27% of the total *at most* and could have been as small as 2%.  Moreover, given the Court's denial of Plaintiff's class certification motion—in which the Court found that Nordstrom had "supplied considerable evidence that the existing conditions regarding the nature of the work performed by Cosmetics Counter Employees varies both store-to-store and employee-to-employee" (Dkt. # 164 at p. 9 of 18)—Plaintiff faced a real risk that the Court would conclude that such variation prevented Plaintiff from representing *any* CCEs other than herself.  As the Court noted at the hearing on Nordstrom's motion for judgment on the pleadings, the Court may have concluded that there would be "no PAGA representation."  Dkt. # 255-2 at page 10 of 28.

Second, although Plaintiff believes that she could demonstrate at trial that the nature of the CCE's work reasonably permits the use of seats, the Court could have agreed with Nordstrom's position—which it maintained consistently throughout the case—that the nature of the CCE's work required them to be standing.  Moreover, the Court could conclude that given the layout of the cosmetic counters, providing a seat would not be feasible because it would conflict with the CCE's performance of their other tasks, and the tasks of their fellow CCEs.  At trial, the Court could also agree with Nordstrom and conclude that the nature of the CCEs' work varied depending on how busy the Nordstrom location was and the amount of CCE staffing at the location.  *See, e.g.,* Dkt. # 187-1 at 12-13.  If so, the Court could determine that while the work of some of the CCEs permitted the use of seats, the work of other CCEs did not.

Third, even if Plaintiff were to demonstrate at trial that PAGA penalties were warranted, PAGA provides the Court with broad discretion to reduce the available

---

subgroup could include the CCEs who worked at substantially identical counters at only the three stores where Plaintiff worked.  This subgroup would represent approximately 6% of the total group of CCEs.  Dkt. # 249-4 at ¶ 8.

REPONSE TO MOTION TO CLARIFY RECORD AND RECONFIRM APPROVAL
OF PAGA SETTLEMENT
CASE NO. 11-CV-08471 CAS (MRWx)

penalties.  Cal. Lab. Code § 2699(e)(2); *Thurman v. Bayshore Transit Mgmt., Inc.,* 203 Cal. App. 4th 1112, 1135-36 (2012) (court has discretion whether to impose the PAGA penalty, and if so in what amount).  Given the sharply disputed nature of the facts relating to the tasks that CCEs perform on a daily basis, whether those tasks (including interacting with customers who expect a certain level of customer service) can reasonably be performed while sitting, and the varied nature of the layout of Nordstrom's cosmetics counters, there is a substantial risk that the Court would reduce any award of PAGA penalties.  *See Aguirre v. Genesis Logistics,* 2013 WL 10936035 (C.D. Cal. Dec. 30, 2013) (reducing possible PAGA penalties of $1.8 million to $500,000 plus $100,000 per subsequent month of non-compliance up to an additional $500,000); *see Fleming v. Covidien, Inc.,* 2011 WL 7563047 at *8 (C.D. Cal. Aug. 12, 2011) (reducing possible PAGA penalties of $2.8 million to $500,000).  As such, if the Court followed the lead of other seating cases in this district, it could reduce the available PAGA penalty by as much as 72% (as in *Aguirre*) or 82% (as in *Fleming*).

## B.    The Settlement Continues to be Fair and Reasonable Under a Revised Calculation of Possible Available Penalties

As noted above, based on the data provided to the Settlement Administrator, CCEs throughout California did not work approximately 45,000 pay periods, as Plaintiff believed at the time of her settlement approval motion, but 365,196.  Even using this revised number of pay periods as a basis for calculating possible PAGA penalties, however, the Settlement continues to be a fair and reasonable resolution of this highly contentious and risky litigation.

Theoretically, if at a PAGA representative trial, Plaintiff were able to represent every CCE who worked for Nordstrom in California during the relevant period *and* were able to recover a $100 penalty for every pay period worked by them, the total penalties

REPONSE TO MOTION TO CLARIFY RECORD AND RECONFIRM APPROVAL
OF PAGA SETTLEMENT
CASE NO. 11-CV-08471 CAS (MRWx)

that could be awarded (without any reduction by the Court) would be $36,519,600—that is, 365,196 pay periods x $100 per pay period. The $995,000 Settlement Fund represents approximately 3% of this total. Under the circumstances of this litigation, however, the $36 million figure is grossly inflated and simply unachievable *even if* Plaintiff were to succeed in her motion regarding the scope of trial and go on to prove her case on the merits. As noted above, at around the time of the settlement of this action, the Court had indicated in no uncertain terms that Plaintiff could not represent "every single Nordstrom employee in every single cosmetics department across the state. That's obvious." Dkt. # 255-2 at p. 10.

As indicated in her settlement approval motion, the largest group of CCEs that Plaintiff could have represented was the group of CCEs who worked at counters that were "functionally identical" counters. The employees who worked at those counters represented approximately 27% of the total group of CCEs. Dkt. # 249-4 at ¶ 8. The maximum amount of PAGA initial penalties for these CCEs, therefore, would be 27% of the total possible penalty ($36,519,600), or $9,860,292. The $995,000 Settlement fund, therefore, represents 10.1% of the maximum PAGA penalties that Plaintiff could have achieved even if she had succeeded in her motion regarding the scope of the trial.[6]

Notably, however, the Court could have determined that Plaintiff's proposed group of affected employees was too broad and instead defined a much smaller scope of representation for trial. If the Court had limited the scope of trial to those employees who worked at the counters and cashwraps where Ms. Tseng worked, the maximum PAGA penalties would have been reduced by far more. Those who worked at her counters and cash wraps represent, at most, 2% of the total group of CCEs. Dkt. # 249-4

---

[6] The total settlement value included both the $995,000 settlement fund and the $26,021 in settlement administration fees, which Nordstrom paid separately. *See* Dkt. 255-2, Paragraph 6. The total settlement value, therefore amounted to $1,021,021. This figure represents 10.4% of the maximum PAGA penalties for the subgroup that Plaintiff sought to represent at trial.

16

REPONSE TO MOTION TO CLARIFY RECORD AND RECONFIRM APPROVAL OF PAGA SETTLEMENT
CASE NO. 11-CV-08471 CAS (MRWx)

at ¶ 8.  If the Court had limited the scope of Plaintiff's trial to this subset of CCEs, the total PAGA penalties available would be 2% of the total possible penalty, or $730,392.[7] The Settlement fund achieved by Plaintiff represents more than 100% of the penalties associated with this smaller group.[8]

Moreover, as noted above in footnote 5, although Plaintiff's motion regarding the scope of trial did not propose it, a third possible subgroup of affected employees could consist of the CCEs who worked at substantially identical counters at the three Nordstrom stores where Plaintiff herself worked.  This subgroup would represent approximately 6% of the total group of CCEs.  *See* Dkt. # 249-4 at ¶ 8.  If the Court had limited the scope of Plaintiff's trial to this subgroup of CCEs, the total PAGA penalties available would be 6% of the total possible penalty, or $2,191,176.[9]  The Settlement fund represents more than 45% of the penalties associated with this additioanl subgroup.[10]

Ten percent of the total penalties for the largest scope of trial that Plaintiff sought (using the revised number of pay periods at issue) is, of course, less than the percentage of the penalties for that same subgroup of CCEs (82%) that Plaintiff's Counsel calculated and stated in its settlement approval brief.  *See* Dkt. # 249-1 at 12. Nonetheless, in light of the risks that Plaintiff faced in defining the scope of trial, trying the case, and seeking an award of penalties, a recovery of 10.1% of the total achievable penalties—or 45% or 136% of the total penalties, depending on the subgroup of CCEs— is reasonable and fair to the State of California and the other aggrieved employees.  *See Stovall-Gusman v. W.W. Granger, Inc.,* 2015 WL 3776765, at *4 (N.D. Cal. June 17,

---

[7] 2% of $36,519,600 = $730,392.
[8] $995,000 ÷ $730,392 = 136.2%.  Using the total settlement value of $1,021,021 results in an even higher percentage:  139.8%.
[9] 6% of $36,519,600 = $2,191,176.
[10] $995,000 ÷ $2,191,176= 45.4%.  Using the total settlement value of $1,021,021 results in a percentage of 46.6%.

17

REPONSE TO MOTION TO CLARIFY RECORD AND RECONFIRM APPROVAL OF PAGA SETTLEMENT
CASE NO. 11-CV-08471 CAS (MRWx)

2015) (finding a total settlement amount of 10% of what a class might have been awarded had they succeeded at trial to be within the range of reasonableness in light of the risks and costs of litigation); *Ma v. Covidien Holding, Inc.*, 2014 WL 360196, at *5 (C.D. Cal. Jan. 31, 2014) (finding a settlement worth 9.1% of the total value of the action to be within the range of reasonableness in light of the risks of litigation).

In a class action case, the Northern District of California approved a settlement representing 15% of the potential recovery. *Villegas v. J.P. Morgan Chase & Co.*, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012).[11]  Similarly, in *Echavez v. Abercrombie & Fitch Co., Inc.*, 2017 WL 3669607 at *3 (C.D. Cal. March 23, 2017), the Court found PAGA penalties of $340,000 in a seating case "reasonable and fair" even though that figure was "significantly less" than the statutory maximum PAGA penalty that could be assessed.  The number of affected employees in *Echavez* was between 8,818 and 10,000—that is, even greater than the 8,413 affected CCEs here—and the plaintiff did not present *any* evidence of the number of pay periods that the affected employees worked.  *Id.*  Nonetheless, the Court approved the settlement.  *Id.*

It cannot be reasonably contested that the number of pay periods at issue in a PAGA case is a relevant factor in assessing the fairness of the settlement.  In light of the circumstances of this case, however, the total number of pay periods worked by *all* CCEs statewide provides a deceptively high penalties estimate.  Even if Plaintiff had succeeded on her motion regarding the scope of trial, the highest number of pay periods for which she would seek PAGA penalties was only a little more than a quarter (27%) of the total pay periods statewide.  In addition, while the total number of pay periods is one factor in assessing the value of a settlement, the settlement must also be viewed in the context of the risks that the Plaintiff faced.  As described above, those risks here—to the

---

[11] *See also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459. (9th Cir. 2000) (approval of settlement representing roughly 1/6 (or 16.67%) of recovery).

REPONSE TO MOTION TO CLARIFY RECORD AND RECONFIRM APPROVAL OF PAGA SETTLEMENT
CASE NO. 11-CV-08471 CAS (MRWx)

size of the case, the likelihood of succeeding on the merits, and the Court's discretion in awarding (and greatly reducing) penalties—were substantial.

In short, viewing all of the circumstances of this case suggests that Plaintiff was able to achieve a fair and reasonable settlement that continues to warrant Court approval.

## IV.    CONCLUSION

For the reasons stated above, Plaintiff does not oppose Nordstrom's motion to Reconfirm Settlement Approval and agrees that the Settlement continues to be fair and reasonable and warrants Court approval.

Date:   January 7, 2019                  Respectfully submitted,

                                                 **GIBBS LAW GROUP LLP**

                                          By: */s/ Steven M. Tindall*
                                               Steven M. Tindall
                                               Amanda M. Karl

                                               Jessica Riggin
                                             RUKIN HYLAND RIGGIN

                                               Jean Hyams
                                             LEVY VINICK BURRELL HYUAMS LLP

                                               Kelly Chen
                                             LAW OFFICE OF KELLY CHEN

                                             *Attorneys for Plaintiff*

REPONSE TO MOTION TO CLARIFY RECORD AND RECONFIRM APPROVAL OF PAGA SETTLEMENT
CASE NO. 11-CV-08471 CAS (MRWx)