1  Robert J. Drexler, Jr.(SBN 119119)
   Robert.Drexler@capstonelawyers.com
2  Molly Ann DeSario (SBN 230763)
   Molly.DeSario@capstonelawyers.com
3  Jonathan Lee (SBN 267146)
   Jonathan.Lee @capstonelawyers.com
4  Capstone Law APC
   1875 Century Park East, Suite 1000
5  Los Angeles, California 90067
   Telephone:   (310) 556-4811
6  Facsimile:   (310) 943-0396

7  Attorneys for Proposed Intervenor Trang Nguyen

8                  UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11 | JESSIKA TSENG, individually and on      | Case No.  11-CV-08471 CAS (MRWx)
   | behalf of all others similarly situated,  |
12 |                                           | **NOTICE OF MOTION AND MOTION**
   |                    Plaintiff,             | **TO INTERVENE; MEMORANDUM**
13 |                                           | **OF POINTS AND AUTHORITIES**
   |           vs.                             |
14 |                                           | Date:    February 4, 2019
   | NORDSTROM, INC., and Does 1               | Time:    10:00 a.m.
15 | through 50, inclusive,                    | Place:   Courtroom 8D
16 |                    Defendants.            |
17

18

19

20

21

22

23

24

25

26

27

28

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 4, 2019, at 10:00 a.m., in Courtroom 8D of the above-captioned court, located at 350 W. First Street, Los Angeles, California 90012, Trang Nguyen ("Intervenor")—the lead plaintiff in a related PAGA action against Nordstrom, Inc., *Nguyen v. Nordstrom*, No. 30-2011-00484903-CU-OE-CXC (Orange County Superior Court June 17, 2011)—will, and hereby does, move to intervene in the instant action pursuant to Federal Rules of Civil Procedure 24(a) and 24(b).

This Motion to Intervene (the "Motion") is based on the Memorandum of Points and Authorities, the Declaration of Robert J. Drexler, Jr., the pleadings and papers on file herein, and such further evidence and oral argument as may be presented at the hearing on the Motion.

This motion is made following the conference of counsel pursuant to Central District Local Rule 7-3 which took place on January 4, 2019.

Dated:  January 7, 2019

Respectfully submitted,

Capstone Law APC

By: _Robert J. Drexler, Jr._

Robert J. Drexler, Jr.
Molly Ann DeSario
Jonathan Lee

Attorneys for Trang Nguyen

MOTION TO INTERVENE

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.  FACTS AND PROCEDURE ............................................................................ 3

     A.   *Tseng v. Nordstrom, Inc.* ........................................................................ 3

     B.   *Nguyen v. Nordstrom, Inc.* ..................................................................... 5

III. ARGUMENT ..................................................................................................... 9

     A.   The Rules Governing Intervention are Liberally Construed and Class
          Members Generally Satisfy Intervention Requirements .................................. 9

     B.   Intervenor Meets the Requirements for Mandatory Intervention ................... 9

          1.   The Motion to Intervene Is Timely ............................................................. 9

          2.   Intervenor Has a Clear Interest in the Subject Property ......................... 12

          3.   Short of Intervention, Intervenor's Ability to Protect Her Interests
               Will Be Significantly Impaired and Impeded By the Disposition of
               the Action .................................................................................................. 13

          4.   Plaintiff Does Not Adequately Represent Intervenor's Interests ............ 14

     C.   In the Alternative, Permissive Intervention Should Be Granted .................... 15

IV.  CONCLUSION ................................................................................................ 16

1

# TABLE OF AUTHORITIES

2

3   **FEDERAL CASES**

4   *Arakaki v. Cayetano*, 324 F3d 1078 (9th Cir. 2003)...................................... 9

5   *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893 (9th

6       Cir. 2011) ................................................................................................ 5, 9

7   *In re Discovery Zone Secs. Litig.*, 181 F.R.D. 582 (N.D. Ill. 1998)................... 8

8   *Lockyer v. United States*, 450 F.3d 436 (9th Cir. 2006) ................................. 6

9   *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525 (9th Cir. 1983) ..................... 9

10  *SEC v. Navin*, 166 F.R.D. 435 (N.D. Cal. 1995) ........................................... 9

11  *Sierra Club v. USEPA*, 995 F.2d 1478 (9th Cir. 1993)..................................... 8

12  *Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810 (9th Cir.

13      2001) ..................................................................................................... 6, 9

14  *Spangler v. Pasadena City Bd. of Education*, 552 F.2d 1326 (9th Cir. 1977) ................ 10

15  *Trbovic v. United Mine Workers of Am.*, 404 U.S. 528 (1972).......................... 9

16  *United Airlines, Inc. v. McDonald*, 432 U.S. 385 (1977)................................. 6

17  *United States v. Carpenter*, 298 F.3d 1122 (9th Cir. 2002) ........................... 6, 7

18  *United States v. City of Los Angeles*, 288 F.3d 391 (9th Cir. 2002) ................. 6

19  *United States v. Oregon*, 745 F.2d 550 (9th Cir. 1984)................................. 6, 7

20  *West Coast Seafood Processors Ass'n v. NRDC*, 643 F.3d 701 (9th Cir.

21      2011) ..................................................................................................... 7

22  *Zackaria v. Wal-Mart Stores, Inc.*, 142 F. Supp. 3d 949 (C.D. Cal. 2015)....................... 8

23

24  **FEDERAL STATUTES**

25  Fed. R. Civ. P. 24(a)(2) (Advisory Committee notes, 1966 Amendment) ........................ 6

26  Fed. R. Civ. P. 24(b)........................................................................................ 10

27

28

1

**STATE CASES**

2

*Villacres v. ABM Industries Inc.*, 189 Cal. App. 4th 562 (2010) ...................................... 13

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO INTERVENE

## I.     INTRODUCTION

Aggrieved employee Trang Nguyen seeks to intervene in this action in the wake of Defendant Nordstrom, Inc.'s ("Nordstrom") recent admission (*see* Dkt. No. 255) that the Court was given grossly inaccurate material information in connection with the Motion for Approval of the PAGA[1] Settlement (*see* Dkt. No. 249), which this Court granted on January 8, 2018 (*see* Dkt. No. 252). Specifically, the Court was told that aggrieved employees worked during a combined total of 45,065 pay periods during the PAGA statute of limitations period. Based on these pay period figures—the most important figure for purposes of accurately valuing a seating claim under PAGA—Plaintiff Jessika Tseng (collectively with Nordstrom, the "Parties") represented to the Court that the penalties secured by the settlement amounted to approximately 22% of Nordstrom's maximum potential exposure for PAGA penalties and is therefore fair and reasonable.

A year after the PAGA settlement was approved by this Court, Nordstrom now reveals that the actual number of pay periods was actually ***365,196*, which is *greater than eight times*** the estimate provided the Court. As such, Nordstrom wants to release an additional 320,000+ pay periods for no additional consideration to Plaintiff, the LWDA, or other aggrieved employees.  Furthermore, Nordstrom remarkably wants the Court to believe that the number of pay periods/amount in controversy is completely irrelevant when negotiating a PAGA seating settlement or determining the fairness of a settlement. In other words, Nordstrom implicitly argues that the Court's scrutiny for settlement approval is so light that essentially any value can pass muster—a PAGA settlement valued at $10 per pay period should be approved just as one valued at $80 per pay period would be.

This absurd position, if adopted, would render the Court's approval powers a nullity, and so it is no surprise that it directly conflicts with published federal precedent on how courts should evaluate PAGA settlements. *See O'Connor v. Uber Techs., Inc.*, 201 F.

---

[1] "PAGA" refers to the Labor Code Private Attorneys General Act of 2004, Labor Code §§ 2698, *et seq*.

1   Supp. 3d 1110, 1122 (N.D. Cal. 2016). The court in *O'Connor* concluded that the

2   proposed PAGA settlement in that case was deficient because, among other reasons, the

3   overall compensation to the class was "relatively modest when compared to the **verdict**

4   **value**." *Id.* at 1135 (emphasis added). "[T]he adequacy of settlement as a whole," the

5   court stated, thus "turns in large part on whether the PAGA aspect of the settlement can

6   stand on its own." *Id.*

7        Nordstrom unequivocally had an obligation to promptly inform the Court of this

8   issue when—by Nordstrom's own account (*see* Dkt. No. 255-1, 14 of 24)—the settlement

9   administrator disclosed to the Parties in **March 2018** that the total number of pay periods

10   in question was actually 365,196. The only reason why Nordstrom has brought this issue

11   to the Court's attention now—**nearly 10 months later and long after the settlement**

12   **checks were sent to aggrieved employees**—is because Ms. Nguyen indicated to

13   Nordstrom that she would inform the Court of this issue.

14        Despite the glaring error, Nordstrom asks the Court to "reconfirm approval" of the

15   grossly undervalued PAGA settlement on the dubious grounds that "the settlement

16   agreement was not conditioned on the number of affected employees, the number of pay

17   periods at issue or on a specific pay period value." *See* Dkt. No. 255-1, 14 of 24 ("Motion

18   to Re-Confirm Settlement"). Nordstrom wants the Court to re-approve the settlement as if

19   none of the facts or metrics of this case mattered, and as if complete candor to the Court

20   were not required.

21        That Nordstrom, the alleged Labor Code violator, is the only settlement proponent

22   under these suspicious circumstances is reason in itself for the Court to not "reconfirm"

23   the settlement. To rule otherwise would be to allow Nordstrom, the least credible

24   advocate for this settlement's reasonableness, to effectively represent the interest of the

25   State of California—the "real party in interest" in this action (*see Iskanian v. CLS*

26   *Transportation Los Angeles, LLC*, 59 Cal. 4th 348, 387 (2014)). This would undermine

27   PAGA's express purpose to "punish and deter employer practices that violate the rights of

28   numerous employees under the Labor Code." *Id.* at 384. Fundamentally, Nordstrom has

misled aggrieved employees and the State to believe that the Parties' settlement was fair and reasonable, securing approximately $22 per pay period on the gross settlement amount, when in fact it was for less than $3 per pay period, a shocking reduction in the value of the settlement by approximately 88%.

This motion is therefore made on the grounds that:  (1) Nordstrom failed to discharge its obligations to the Court by correcting a material misstatement contained in the record regarding the principal basis on which the Court determined that the parties' PAGA settlement was fair and reasonable; (2) Ms. Nguyen has satisfied PAGA's pre-filing administrative requirements and is herself an aggrieved employee with her own PAGA representative action against Nordstrom and therefore has an interest in the subject matter of this action and settlement; (3) if re-approved, the Parties' settlement would substantially reduce the amount of PAGA penalties Ms. Nguyen would be eligible to collect in her separate PAGA action; (4) the settlement would substantially impair and impede Ms. Nguyen's ability to protect her interests, and the interests of the State of California; and (5) Plaintiff does not adequately represent Ms. Nguyen's interests because she miscalculated Nordstrom's maximum exposure for PAGA penalties, and should have moved to set aside the settlement after she learned that the penalties provided were grossly undervalued.

The Court should therefore grant this motion to intervene and allow Ms. Nguyen to file a formal opposition to Nordstrom's motion. Alternatively, Ms. Nguyen would ask the Court to either: (1) set aside the settlement, or (2) approve the settlement only to the extent it would extinguish Nordstrom's liability for no more than 45,065 pay periods—the figure previously represented to the Court.

Plaintiff Tseng does not oppose this motion.

## II.     FACTS AND PROCEDURE

### A.     *Tseng v. Nordstrom, Inc.*

Ms. Tseng filed her complaint against Nordstrom in the Los Angeles County Superior Court on September 9, 2011. The complaint alleged a single cause of action

under PAGA for the failure to provide suitable seating to employees. On October 13, 2011, Nordstrom removed the case to federal court, invoking diversity jurisdiction under 28 U.S.C. § 1332(a) and jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Dkt. No. 1. Following several years of litigation, the Parties negotiated a settlement of Plaintiff's PAGA seating claim on July 21, 2017. Dkt. No. 249-1, 4:14.

On December 8, 2017, Ms. Tseng sought approval of the Parties' PAGA settlement. *Id.* In support of the Motion, Ms. Teng's attorney, Steven M. Tindall, submitted a declaration which stated that the PAGA settlement was reasonable in light of Nordstrom's maximum potential exposure for PAGA penalties:

> In preparation for the settlement conference, Nordstrom provided an estimate of the number of weeks worked by CCEs throughout the state and the liability period through the fall of 2016. Using this figure, Plaintiff's Counsel calculated the number of weeks worked by CCEs on a monthly basis and used that figure to estimate the number of weeks worked by CCEs throughout the state during the liability period up until the end of November 2017. That figure is 90,130 workweeks. Because pay periods encompassed two workweeks, **Plaintiff's Counsel estimated the number of pay periods as 90,130 / 2 = 45,065 pay periods.** Assuming a conservative estimate of only "initial violation" penalties under PAGA, **Plaintiff's Counsel estimated the likely maximum PAGA penalties for the CCEs who worked throughout the state during the liability period as 45,065 pay periods x $100 per pay period = $4,506,500. (emphasis added)**

*See* Dkt. No. 249-4, Declaration of Steven M. Tindall ¶ 7.

Critically, Plaintiff's analysis of Nordstrom's maximum potential exposure for PAGA penalties was based on the estimate that employees worked during a combined total of 45,065 pay periods during the relevant PAGA statute of limitations period. Based on this estimate, Mr. Tindall argued:

> In light of the range of possible successful outcomes for Ms. Tseng, the Settlement's penalty amount is reasonable and fair to the State of California, Plaintiff, and the other Aggrieved Employees. The total settlement amount of $995,000 represents over 22% of the PAGA penalties available if Plaintiff demonstrated a violation on behalf of all CCEs statewide, nearly 82% of the PAGA penalties for the largest scope of trial that Plaintiff sought, and substantially more than 100% of the penalties available had the Court limited the scope of trial to include only those employees who worked at counters and cashwraps at the stores where Plaintiff worked.

*See* Dkt. No. 249-1, Memorandum of Points and Authorities in Support of Motion for Approval of PAGA Settlement 12:15-22.

On January 8, 2018, the Court approved the Parties' PAGA settlement, presumably relying on the representations made in Plaintiff's motion on such key data points such as the number of pay periods and maximum exposure: "The Court has considered the nature of the claims, the amounts to be paid in settlement, the allocation of settlement proceeds among the Affected Employees and the fact that a settlement represents a compromise of the Parties' respective positions rather than the result of a finding of liability at trial." *See* Dkt. No. 252.

**B.** *Nguyen v. Nordstrom, Inc.*

Ms. Nguyen was employed by Nordstrom as a cosmetics salesperson from October 2006 through February 2011 at Nordstrom's Brea, California location. *See* Drexler Decl., Ex. A, Complaint in Intervention at ¶ 21. Like other salespeople, Ms. Nguyen completed customer transactions on a cash register throughout her workday, including sales, returns, and exchanges. *Id.*, Ex. A at ¶ 40. While operating the cash register, Ms. Nguyen was able to reach for all necessary items, such as bags and cash register controls, without moving the lower half of her body. *Id.* Ms. Nguyen's work area was large enough to accommodate a stool near the cash register, and Ms. Nguyen could have performed all of her cash register duties effectively, while seated at a stool. *Id.* However, in accordance with Nordstrom's policy, Ms. Nguyen was never provided a seat at the cash register. *Id.*

On June 13, 2011, Ms. Nguyen sent her notice of claims to the California Labor & Workforce Development Agency ("LWDA") and Nordstrom, satisfying the administrative prerequisite to bring PAGA claims. Drexler Decl., Ex. A at ¶¶ 30-31. Accordingly, Ms. Nguyen's PAGA claims period begins on June 13, 2010.  *See id.* Ms. Nguyen filed her PAGA complaint on June 17, 2011 in the Superior Court of California for the County of Orange, alleging proposed class claims and representative PAGA

claims based on various wage and hour provisions of the Labor Code, including failure to provide seating. Drexler Decl. at ¶ 2.

On September 2, 2011, Nordstrom removed the case to the United States District Court for the Central District of California. Drexler Decl. at ¶ 3. On May 31, 2012, the federal district court granted Ms. Nguyen's motion to remand the matter back to the Orange County Superior Court. *Id.*

On December 7, 2012, the court granted Nordstrom's motion to stay Ms. Nguyen's case pending resolution of two related federal, off-the-clock cases against Nordstrom: *Maraventano v. Nordstrom, Inc.*, No. 10-cv-02671 (S.D. Cal.) and *Balasanyan v. Nordstrom, Inc.*, No. 11-cv-2609 (S.D. Cal.), and one related federal seating case against Nordstrom: *Tseng v. Nordstrom, Inc.*, No. 11-cv-08471 (C.D. Cal.). Drexler Decl. at ¶ 4.

On September 8, 2016, because of the resolution of the *Maraventano* and *Balasanyan* actions by settlement for commission-paid employees, the *Nguyen* court lifted the stay on each of Ms. Nguyen's causes of action except for Ms. Nguyen's seventh cause of action and PAGA claim for the failure to provide seating. Drexler Decl. at ¶ 5. The seating claim remained stayed in this matter because the same claims were alleged in the still-pending *Tseng* matter. The court also directed the parties to meet and confer as to what discovery propounded and produced in the *Tseng* matter could be utilized in the *Nguyen* action. Drexler Decl. at ¶ 5.

On April 13, 2018, the court granted Nordstrom's motion for summary adjudication against all of Ms. Nguyen's wage and hour claims except for her seating claim or PAGA claim in general, holding that "Labor Code § 2699 allows an aggrieved employee to pursue penalties for Labor Code violations irrespective of whether he or she personally suffered from all of the alleged violations alleged." Drexler Decl. at ¶ 6. At a hearing on April 13, 2018, Ms. Nguyen informed the court of the *Tseng* settlement and judgment. *Id.* The parties also discussed their previous agreement that there was no private right of action authorizing Ms. Nguyen's seventh cause of action for failure to

provide seating, but that she could pursue her seating claim under PAGA. *Id.* Thereafter, the Court instructed Ms. Nguyen to file a motion to lift the stay on her seating claim. *Id.*

Ms. Nguyen filed her motion to lift the stay on May 18, 2018, requesting not only to resume litigation on her seating claims, but to represent all non-exempt employees who operated a cash register, rather than just other cosmetic counter employees like Ms. Nguyen. Drexler Decl. at ¶ 7. The court granted the motion in full on June 25, 2018, allowing her to represent all employees with cash register duties on the basis of *Huff v. Securitas Security Servs. USA, Inc.*, 23 Cal. App. 5th 745 (2018) (holding that an aggrieved employee may represent any other aggrieved employees under PAGA for any other predicate violations of the Labor Code). Drexler Decl. at ¶ 7.

Ms. Nguyen is now proceeding with her surviving PAGA claims for seating violations. Drexler Decl. at ¶ 8. The matter is assigned to the Honorable William D. Claster. *Id.*

## C.   Nordstrom's Motion to "Re-Confirm" Approval of the PAGA Settlement

Nearly a year after the Court approved the PAGA settlement, and almost immediately after Ms. Nguyen finally was able to confirm that the Court was provided with grossly inaccurate information in connection with the PAGA settlement, Nordstrom moved the Court to "re-confirm" approval of the PAGA settlement on December 21, 2018. Dkt. No. 255, 1:12-16. Nordstrom claimed that the motion was necessary simply to ensure that, "the Court has a full and final accounting of the Settlement and on the grounds that the Settlement Agreement remains fair, adequate and reasonable and promotes the purposes of PAGA[.]" *Id.*

In the motion, Nordstrom incredibly claims that it did not realize that Plaintiff provided the Court with grossly inaccurate information regarding its client's pay period data until after the administrator advised the Parties of the actual number of pay periods worked during the PAGA statute of limitations period:

Following the Court's approval of the parties' Settlement, Nordstrom

provided the Settlement Administrator, Epiq Systems ("Epiq"), with updated data on the Affected Employees as required by the Settlement Agreement. (Doc. 253, ¶ 3.) Epiq then analyzed the data, and on March 12, 2018, its Director of Client Services, David Garcia, sent an email notifying counsel for both parties of the final data for the Settlement and asked for permission to administer the Settlement based on those numbers. Mr. Garcia's email confirmed that the final number of Affected Employees who would receive payments was 8,413 and that the final pay period count was 365,196. (Dunne Decl., ¶ 3, Ex. B [3/12/18 David Garcia email].)

In full, Mr. Garcia's email to Tseng's and Nordstrom's counsel stated:

Good Afternoon, I have attached a spreadsheet listing the eligible pay periods and the payment amounts for each class member. Please note that for security have included a Tracking Number, which is a unique identifier that Epiq assigns to each claimant. Also, this spreadsheet includes the calculated payment for Ms. Tseng, but it does not include her service payment. Ms. Tseng's service payment will be sent separately.

There are 8,413 class members with a total of 365,196 eligible pay periods. Per Section E, paragraph a of the Settlement Agreement, the amount to be paid on a pro rata basis to the class is $121,875, which means that each eligible pay period is worth approximately $0.33. The average payment amount per claimant is $14.48, the lowest payment amount is $0.33 and the highest payment amount is $59.06 (again, excluding the service payment). Due to rounding, the total of all payments is $121,830.80, which will leave a remainder of $44.20.

Please review the attached spreadsheet and confirm that you approve of the methodology that I've outlined above. As always, if I may provide any additional information, please do not hesitate to contact me directly. Thank you, David Garcia, MBA, PMP Epiq | Director, Client Services (Dunne Decl., ¶¶ 3-4, Ex. B [3/12/18 David Garcia email] [emphasis added].)

In response to the request for approval, Mr. Tindall responded: "Others should weigh in, but this seems fine to me." Dkt. No. 255-1, 11:13-12:17.

Nordstrom does not even attempt to explain why it waited nearly 10 months to bring this issue to the Court's attention, except to say, "In a separate matter, Nordstrom learned there were concerns that the Court's approval of the Settlement was based, in part, on incorrect information." Indeed, the only reason why Nordstrom has brought this issue to the Court's attention now is because Ms. Nguyen threatened to do so after discovering that the figure provided to the Court was grossly inaccurate.

III.   **ARGUMENT**

    A.    **The Rules Governing Intervention Are Liberally Construed and Class Members Generally Satisfy Intervention Requirements**

The rules relating to intervention "are broadly interpreted in favor of intervention." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011); *Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001) ("In general, we construe Rule 24(a) liberally in favor of potential intervenors"). This is, in part, because "[a] liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." *United States v. City of Los Angeles*, 288 F.3d 391, 397-398 (9th Cir. 2002) (internal citation omitted). In evaluating whether intervention requirements are met, courts "are guided primarily by practical and equitable considerations," not technical distinctions. *Id.*

    B.    **Intervenor Meets the Requirements for Mandatory Intervention**

Intervention must be permitted where: (1) the motion is timely; (2) the applicant claims a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that disposition of the action may as a practical matter impair or impede his or her ability to protect that interest; and (4) the applicant's interest is not adequately represented by the existing parties to the action. Fed. R. Civ. P. 24(a); *State ex rel. Lockyer v. United States*, 450 F.3d 436, 440 (9th Cir. 2006). Each of these requirements is satisfied here.

        1.    **The Motion to Intervene Is Timely**

Courts have wide discretion in determining whether an applicant has timely sought intervention and should be particularly lenient where intervention is sought as a matter of right. *United States v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984) ("the timeliness requirement for intervention as of right should be treated more leniently than for permissive intervention because of the likelihood of more serious harm") (internal citations omitted). Courts generally consider the following factors in determining timeliness: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2)

the prejudice to other parties; and (3) the reason for the length of the delay." *United States v. Carpenter*, 298 F.3d 1122, 1124-1125 (9th Cir. 2002).  In the class action context, a class member's intervention is timely if the class member acts promptly upon learning of deficiencies in the representation of the class member's interests.  *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394 (1977) (intervention timely when the  intervenor acts "as soon as it [becomes] clear…that the interests of the unnamed class members would no longer be protected by the named class representatives"); *U.S. v. Carpenter*, 298 F.3d at 1125, (finding that the trial court abused its discretion in finding intervention untimely where Intervenors acted as soon as they had notice that the proposed settlement was contrary to their interests).

This Motion is timely because Nordstrom only recently acknowledged that the Court was given grossly inaccurate information regarding the number of pay periods at issue (i.e., 365,196 instead of 45,065).  Drexler Decl.  at ¶¶ 9-12. For weeks, Ms. Nguyen's counsel sought clarification from Nordstrom's counsel regarding the number of pay periods implicated in the *Tseng* settlement to properly value the claims in her case.  It was not until Ms. Nguyen and Nordstrom's mediation on November 28, 2018, that Ms. Nguyen finally was able to confirm the actual number of pay periods.  *See id*.

Further, this motion is brought within just a few weeks of the filing of Nordstrom's motion to "re-confirm" approval of the grossly inadequate PAGA settlement on the absurd grounds that, "the settlement agreement was not conditioned on the number of affected employees, the number of pay periods at issue or on a specific pay period value." *See* Dkt. No. 255-1, 14 of 24. To simply "re-confirm" approval of the settlement under the circumstances would be a clear miscarriage of justice, and would undermine the purpose of the PAGA. *See O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016) (the LWDA has explained that trial courts should consider whether "the relief provided for under the PAGA [is] genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public[.]").

In summary, these changed circumstances provide solid grounds for timely

MOTION TO INTERVENE

1    intervention.  *See West Coast Seafood Processors Ass'n v. NRDC*, 643 F.3d 701, 708 (9th

2    Cir. 2011) ("'changed circumstance' may 'suggest[ ] that the litigation is entering a new

3    stage' and, therefore, 'militate in favor of granting the application.'") (*quoting United*

4    *States v. Oregon*, 745 F.2d at 552).

5         Notwithstanding the above authorities, Ms. Nguyen anticipates that Nordstrom will

6    argue that under *Allen v. Bedolla*, 787 F.3d 1218 (9th Cir. 2015), the motion is untimely

7    because Ms. Nguyen has known about this action's pendency for several years. *See id.* at

8    1222 ("[w]e are not persuaded that Objectors' motion was timely, because the motion was

9    filed after four years of ongoing litigation, on the eve of settlement[.]"). *Allen* is

10   inapposite, however, for a few reasons. First, the settlement at issue in *Allen* was a class

11   action settlement, and accordingly gave class members the opportunity to file formal

12   objections to the settlement, which was not an option here:

13        We are not persuaded that Objectors' motion was timely, because the
          motion was filed after four years of ongoing litigation, on the eve of
14        settlement, and threatened to prejudice settling parties by potentially
          derailing settlement talks, **and especially where Objectors'**
15        **concerns could largely be addressed through the normal**
          **objection process.**
16

17   *Id.* at 1222.

18        Second, the Ninth Circuit specifically observed that under *U.S. v. Carpenter*, a

19   motion to intervene as of right can be timely even though an action has been pending for

20   some time—in *Carpenter*, eighteen months—when the intervenors act promptly after

21   receiving notice of a proposed settlement that would not adequately represent their

22   interests. *U.S. v. Carpenter*, 298 F.3d at 1124. The *Allen* panel declined to apply *U.S. v.*

23   *Carpenter* to the facts of *Allen*, however, because the government was not a party to the

24   *Allen* action:

25        But *Carpenter* involved a government entity not representing
          intervenors' interests . . . Its reasoning was grounded in the need to
26        encourage the assumption that when the government is a party, the
          interests of others will be protected . . . Here, the government is not a
27        party.

28   *Allen*, 787 F.3d at 1222.

MOTION TO INTERVENE

1    Here, the government *is* a party to this case; indeed, case law explicitly holds that

2    the State is the "real party in interest" in every PAGA action. *Iskanian*, 59 Cal. 4th at 382

3    (PAGA authorizes the State to deputize employees to act as proxies for the State to

4    enforce civil penalties, but the LWDA "is always the real party in interest."); *Arias v.*

5    *Superior Court*, 46 Cal. 4th 969, 986 (2009) (in a PAGA action, a judgment "binds not

6    only that employee also the State's employment agencies.").

7    For the above reasons, the Court should find that this motion is timely.

8    ## 2.     Intervenor Has a Clear Interest in the Subject Property

9    Ms. Nguyen has a clear interest in the subject matter of this action because the

10   settlement, if re-confirmed, would extinguish her right to collect valuable penalties under the

11   PAGA for seating violations that—by even Nordstrom's own tacit admission—have been

12   substantially undervalued here.

13   More importantly, the State's interest—which Ms. Nguyen represents as the State's

14   "proxy or agent"—would be compromised. *Arias v. Superior Court*, 46 Cal. 4th 969, 986

15   (2009) (finding a deputized PAGA plaintiff "represents the same legal right and interest" as

16   the state). And the state has a strong interest in forcefully prosecuting PAGA actions to

17   remediate present violations and deter future ones." *Williams v. Superior Court*, 3 Cal. 5th

18   531, 546 (2017). PAGA, after all, meant to further "the goal of achieving maximizing

19   compliance with state labor laws." *Huff v. Securitas Security Services, USA, Inc.*, 23 Cal.

20   App. 5th 745, 756 (2018). A settlement so heavily discounted could never serve PAGA's

21   policy objective in "augmenting the state's enforcement capabilities, encouraging

22   compliance with Labor Code provisions, and deterring noncompliance." *O'Connor v.*

23   *Uber Techs., Inc.*, 201 F. Supp. 3d at 1135.

24   The Ninth Circuit has deemed that "it is generally enough that the interest is

25   protectable under some law, and that there is a relationship between the legally protected

26   interest and the claims at issue." *Sierra Club v. United States EPA*, 995 F.2d 1478, 1484

27   (9th Cir. 1993); *see also In re Discovery Zone Secs. Litig.*, 181 F.R.D. 582 (N.D. Ill.

28   1998) ("an absent class member would have little difficulty showing an interest in the

1   action…..").  Ms. Nguyen's interests are not only protectable under "some" law, they are

2   protected by the *same* act under which Plaintiff's claims were brought—namely, the

3   Labor Code Private Attorneys General Act of 2004. In short, to prevent any further

4   attempts to sell out the State's and aggrieved employees' interests for wholly insufficient

5   value, Ms. Nguyen should be permitted to intervene.

6   **3.   Short of Intervention, Intervenor's Ability to Protect Her**

7   **Interests Will Be Significantly Impaired and Impeded by the**

8   **Disposition of the Action**

9          If Ms. Nguyen is denied the opportunity to intervene, her ability to protect her

10  interests, and the interests of the State of California and other aggrieved employees will be

11  significantly impaired and impeded by disposition of the instant action.  A proposed

12  intervenor need only show that disposition of the existing action has the potential to

13  adversely impact his or her interests.  Thus, a judicial decision which "as a practical

14  matter" would foreclose a proposed intervenor's interest is unequivocally a sufficient

15  impairment.  *Sierra Club*, 995 F.2d at 1486.

16         A "re-approved" settlement would substantially impair Ms. Nguyen's right to

17  collect valuable penalties for the State and aggrieved employees for seating violations that

18  have been substantially undervalued here; i.e., whereas the total number of pay periods in

19  controversy was previously estimated at 45,065, Nordstrom now represents that the total

20  is actually 365,196. To approve the settlement would be to eliminate 320,131 pay periods

21  currently in at issue in Ms. Nguyen's separate action, and significantly truncate her case.

22  Moreover, because PAGA does not require class action procedures such as notice and

23  opt-out/objection rights (*see Zackaria v. Wal-Mart Stores, Inc.*, 142 F. Supp. 3d 949, 954

24  (C.D. Cal. 2015) ("this court will follow the majority of courts in holding that the

25  plaintiff's PAGA claim is not subject to the requirements of Rule 23")), Intervention is the

26  only process by which Ms. Nguyen can permissibly challenge Nordstrom's motion to "re-

27  confirm" approval of the settlement.

28

MOTION TO INTERVENE

### 4.    Plaintiff Has Not Adequately Represented Intervenor's Interests

It is well-settled that "[t]he burden of showing inadequacy of representation is 'minimal' and satisfied if the applicant can demonstrate that representation of its interests 'may be' inadequate." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011); *Arakaki v. Cayetano*, 324 F3d 1078, 1086 (9th Cir. 2003); *Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822-823 (9th Cir. 2001); *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (a proposed intervenor need only show that his or her interests in the action *may be* inadequately represented by the existing parties, and "the burden of making that showing should be treated as minimal").

Courts consider the following three factors in determining adequacy of a representative: "(1) whether the interests of the present party are such that it will make all of the arguments the intervenor would make; (2) whether the present party is capable of and willing to make such arguments; and (3) whether the intervenor would offer a necessary element to the proceedings that the other parties would neglect." *SEC v. Navin*, 166 F.R.D. 435, 441 (N.D. Cal. 1995) (citing *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983)).

The Court should find that Plaintiff does not adequately represent Ms. Nguyen's interests because Plaintiff miscalculated Nordstrom's exposure for PAGA penalties (albeit Plaintiff appears to have been hoodwinked by Nordstrom) and then failed to correct that error after it was brought to her attention by the settlement administrator in March 2018.

Where plaintiffs bring a PAGA representative claim, they take on a special responsibility to their fellow aggrieved workers who are effectively bound by any judgment. *See Iskanian v. CLS Transportation Los Angeles*, LLC, 59 Cal. 4th 348, 381 (2014) ("When a government agency is authorized to bring an action on behalf of an individual or in the public interest, and a private person lacks an independent legal right to bring the action, a person who is not a party but who is represented by the agency is

bound by the judgment as through the person were a party"). Such a plaintiff also owes responsibility to the public at large, as they act as a private attorney general, and 75% of the penalties go to the LWDA, "for enforcement of labor laws ... and for education of employers and employees about their rights and responsibilities under this code." Cal. Lab. Code § 2699(i). This duty imposed upon the PAGA representative is especially significant given that PAGA does not require class action procedures, such as notice and opt-out rights. A settlement that is based on a gross calculation error—Plaintiff's calculations are incorrect by more than a factor of **EIGHT**—could never serve PAGA's policy objective in "augmenting the state's enforcement capabilities, encouraging compliance with Labor Code provisions, and deterring noncompliance." *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d at 1135.

### C.   In the Alternative, Permissive Intervention Should Be Granted

Even if the Court concludes that intervention is not mandatory, the Court should allow Intervenor to intervene under Federal Rules of Civil Procedure Rule 24(b), which provides a court discretion to permit a non-party to intervene where (1) the applicant timely seeks intervention; and (2) the applicant "has a claim or defense that shares with the main action a common question of law or fact."  If a court determines that these two conditions are met, the court may consider other factors in exercising its discretion, including:

> [T]he nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, and its probable relation to the merits of the case.  The court may also consider…whether the intervenors' interests are adequately represented by other parties, whether intervention will prolong or unduly delay the litigation, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.

*Spangler v. Pasadena City Bd. of Education*, 552 F.2d 1326, 1329 (9th Cir. 1977).

As before, Ms. Nguyen easily satisfies each of these requirements.  First, she has sought intervention in a timely manner.  As discussed above, Ms. Nguyen filed this

motion shortly after she learned about the gross calculation error and Nordstrom's attempt to "re-confirm" approval of the settlement notwithstanding the error.  Intervention is therefore timely sought.  Second, it is indisputable that as a private attorney general under PAGA pursuing her own separate action against Nordstrom for an overlapping seating claim, Ms. Nguyen has claims that "share with the main action a common question of law or fact."

## IV.   CONCLUSION

For the foregoing reasons, the Court should grant this motion to intervene so that Ms. Nguyen may be provided an opportunity to file a formal opposition to Nordstrom's motion. In the alternative, Ms. Nguyen would ask the Court to either set aside the settlement, or approve the settlement only to the extent it would extinguish liability for no more than 45,065 pay periods—the amount previously represented to the Court.  To hold otherwise would be to give Nordstrom **8 times** the release for the same amount of penalties as before.

Dated:  January 7, 2019

Respectfully submitted,

Capstone Law APC

By: _____
    Robert J. Drexler, Jr.
    Molly Ann DeSario
    Jonathan Lee

Attorneys for Trang Nguyen

MOTION TO INTERVENE